The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CALIBER HOME LOANS, INC., | Case No. 2:22-CV-00616-RAJ |
| Plaintiff, | **DEFENDANT CROSSCOUNTRY MORTGAGE, LLC'S MOTION TO DISMISS THE COMPLAINT** |
| v. | NOTE ON MOTION CALENDAR: August 5, 2022 |
| CROSSCOUNTRY MORTGAGE, LLC, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

Defendant CrossCountry Mortgage, LLC ("CrossCountry") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint filed by Plaintiff Caliber Home Loans, Inc. ("Caliber") in its entirety.  In support of its motion to dismiss the Complaint, CrossCountry states as follows.

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

THE COMPLAINT ....................................................................................................... 2

ARGUMENT ................................................................................................................. 5

    I.      The Complaint Fails to State a Claim for Unfair Competition
           (Count One) ............................................................................................... 6

    II.     The Complaint Fails to State a Claim Under the Defend Trade
           Secrets Act (Count Two) ........................................................................... 9

    III.    Because the Caliber Alleges that CrossCountry Misappropriated
           Trade Secrets, Caliber's Claim for Conversion of Confidential and
           Proprietary Information (Count Three) is Pre-Empted As a Matter
           of Law ....................................................................................................... 12

    IV.    The Complaint Fails to State a Claim for Tortious Interference
           with Contract (Count Four) ....................................................................... 12

    V.     The Complaint Fails to State a Claim for Aiding and Abetting
           Breach of Fiduciary Duty (Count Five) .................................................... 16

    VI.    The Complaint Fails to State a Claim for Tortious Interference
           with Business Expectancy (Count Six) ..................................................... 17

    VII.   The Complaint Fails to State a Claim for Civil Conspiracy (Count
           Seven) ....................................................................................................... 19

CONCLUSION .............................................................................................................. 21

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - i

JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone: 9216) 586-3939*

STOEL RIVES
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083411.3 0077407-00001

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*All Star Gas, Inc., of Wash. v. Bechard,*
998 P.2d 367 (Wash. Ct. App. 2000) ...................................................... 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................... passim

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................... 1, 5, 11

*Brashkis v. Hyperion Cap. Grp., LLC,* Case No. 3:11-cv-05635-RBL,
2011 WL 6130787 (W.D. Wash. Dec. 8, 2011) ............................. 17

*In re Century Aluminum Co. Secs. Litig.,*
729 F.3d 1104 (9th Cir. 2013) ...................................................... 6

*CleanFish, LLC v. Sims,* No. 19-cv-3663-HSG,
2020 WL 1274991 (N.D. Cal. March 17, 2020) ................... 10, 11, 15

*In re Consolidated Meridian Funds,*
485 B.R. 604 (Bankr. W.D. Wash. 2013) ............................. 17

*Eclectic Props. E., LLC v. Marcus & Millichap,*
751 F.3d 990 (9th Cir. 2014) ..................................................... passim

*Evergreen Moneysource Mortg. Co. v. Shannon,*
274 P.3d 375 (Wash. Ct. App. 2012) ............................. 6, 7, 8

*Fleming v. Corp. of President of Church of Jesus Christ of Latter Day Saints,*
Case No. C04-2338RSM, 2006 WL 753234 (W.D. Wash. Mar. 21, 2006) .................. 19

*Gonzalez v. Planned Parenthood of L.A.,*
759 F.3d 1112 (9th Cir. 2014) ............................. 14

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,*
935 P.2d 628 (Wash Ct. App. 1997) ............................. 8

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
719 P.2d 531 (Wash. 1986) ............................. 6, 7, 8

*Illinois Tool Works, Inc. v. Seattle Safety, LLC,*
Case No. C07-2061JLR, 2009 WL 10675668 (W.D. Wash. Jan. 28, 2009) .................. 12

*InteliClear, LLC v. ETC Global Holdings, Inc.,*
978 F.3d 653 (9th Cir. 2020) ............................. 9

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - ii

JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone: 9216) 586-3939*

STOEL RIVES
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA 98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

**TABLE OF AUTHORITIES**

<u>Page(s)</u>

*Inteum Co., LLC v. Nat. Univ. of Singapore,*
 Case No. C17-1252-JCC, 2017 WL 6611961 (W.D. Wash. Dec. 27, 2017) ....................... 11

*LaFrance Corp. v. Werttemberger,*
 Case No. C07-1932Z, 2008 WL 5068653 (W.D. Wash. Nov. 24, 2008) ........................... 12

*Leingang v. Pierce Cty. Med. Bureau, Inc.,*
 930 P.2d 288 (Wash. 1997) ................................................................. 17

*Levitt v. Yelp! Inc.,*
 765 F.3d 1123 (9th Cir. 2014) ............................................................. 18

*Mann Law Grp. v. Digi-Net Techs., Inc.,*
 Case No. C13-00059-RAJ, 2013 WL 3754808 (W.D. Wash. July 15, 2013) .................... 15

*Moss v. U.S. Secret Service,*
 572 F.3d 962 (9th Cir. 2009) .......................................................... 5, 15

*N.w. Laborers-Employers Health & Sec. Tr. Fund v. Philip Morris, Inc.,*
 58 F. Supp. 2d 1211 (W.D. Wash. 1999) ...................................................... 20

*Pacific Nw. Shooting Park Ass'n v. City of Sequim,*
 144 P.3d 276 (Wash. 2006) ................................................................. 18

*Panag v. Farmers Ins. Co. of Wash.,*
 204 P.3d 885 (Wash. 2009) ............................................................... 6, 8

*Pleas v. City of Seattle,*
 774 P.2d 1158 (Wash. 1989) ............................................................ 12, 15

*Puget Sound Sec. Patrol, Inc. v. Bates,*
 389 P.3d 709 (Wash. Ct. App. 2017) ................................................... 19, 20

*Brown ex rel. Richards v. Brown,*
 239 P.3d 602 (Wash. Ct. App. 2010) ........................................................ 7

*Rigby v. Corliss,*
 Case No. C14-0340-RSL, 2018 WL 3608397 (W.D. Wash. July 27, 2018) ..................... 17

*Spencer v. Peters,*
 Case No. C11-5424-BHS, 2012 WL 4514417 (W.D. Wash. Oct. 2, 2012) ................. 19, 20

*Straw v. Avvo, Inc.,*
 Case No. C20-0294-JLR, 2020 WL 5066939 (W.D. Wash. Aug. 27, 2020) ..................... 18

*Telesaurus VPC, LLC v. Power,*
 623 F.3d 998 (9th Cir. 2010) ........................................................ passim

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - iii

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone: 9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA 98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

# TABLE OF AUTHORITIES

Page(s)

*United Federation of Churches, LLC v. Johnson*,
    --- F. Supp. 3d ---, 2022 WL 1128919 (W.D. Wash Apr. 15, 2022) .................................... 17

*Veronica Foods Co. v. Ecklin*,
    No. 16-CV-07223-JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017) ........................ 11, 15

*W.G. Platts, Inc. v. Platts*,
    438 P.2d 867 (Wash. 1968) ................................................................................ 19

*Wilson v. Craver*,
    994 F.3d 1085 (9th Cir. 2021) ............................................................................... 5

*Zunum Aero, Inc. v. Boeing Co.*,
    Case No. C21-0896JLR, 2022 WL 2116678 (W.D. Wash. June 13, 2022) ......................... 8

**STATUTES**

18 U.S.C. § 1839(5) ................................................................................... 9, 10

18 U.S.C. § 1839(6) ......................................................................................... 9

Defend Trade Secrets Act ................................................................. 2, 5, 9, 11

RCW 19.108.900(1) ..................................................................................... 12

Unfair Business Practices Act, RCW 19.86.920 ........................................... 6

Uniform Trade Secrets Act, RCW 19.108.900 .................................... 2, 12

**RULES**

Fed. R. Civ. P. 12 ...................................................................... passim

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - iv

JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone: 9216) 586-3939*

STOEL RIVES
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA 98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

### INTRODUCTION

CrossCountry and Caliber are competitors in the national home mortgage lending industry, where the labor market is highly mobile and highly competitive. Unhappy with some former employees' lawful decisions to leave to work for a competitor, Caliber has brought the present suit accusing CrossCountry of orchestrating a national "illegal scheme" with departing Caliber employees to "raid" Caliber's employees, misappropriate Caliber's trade secrets, and divert Caliber's customers. When it comes, however, to supporting that rhetoric with actual well-pleaded allegations, Caliber's Complaint rings entirely hollow.

Notwithstanding the make-weight of its 156 paragraphs, the Complaint fails to allege even a single, concrete unlawful act committed by CrossCountry. Nor does the Complaint offer *any* plausible factual allegation supporting an inference that CrossCountry did anything unlawful in hiring approximately 80 widely-dispersed former Caliber employees over a fourteen-month period. To be sure, the Complaint alleges acts that certain former Caliber employees engaged in before they joined CrossCountry. But Caliber makes zero effort to connect anything that those individuals may have done to CrossCountry. Indeed, *every* assertion in the Complaint as to CrossCountry is nothing more than conclusory boilerplate that falls woefully short of the plausibility standard set forth in *Iqbal* and *Twombly*.

The obvious innocent explanation for CrossCountry's alleged actions in this case is CrossCountry's desire to expand its business through aggressive (but lawful) competition, including by offering talented employees better compensation to switch employers. Caliber's Complaint does nothing to rebut this innocent explanation, as required by governing law. Instead, Caliber simply asserts that many employees left Caliber for CrossCountry, and that a few of those employees engaged in wrongful acts before joining CrossCountry, and yet asks the Court to heap speculation upon speculation in order to conclude that CrossCountry must have done something unlawful. The law does not permit a plaintiff to assert such claims where, as here, they are so devoid of any concrete factual content.

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 1

JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone: 9216) 586-3939*

STOEL RIVES
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA 98101
*Telephone 206.624.0900*

Stripping away Caliber's conclusory allegations (as the Court must) leaves no doubt that all seven of Caliber's Counts against CrossCountry are defective as a matter of law.

- Count One's unfair competition claim fails to plead facts showing any unfair or deceptive trade practice or any impact on the broader public interest, as required by Washington law.

- Count Two, asserting a claim under the Defend Trade Secrets Act, is likewise defective because it is unsupported by any plausible factual allegation that CrossCountry ever received any trade secrets belonging to Caliber—let alone that CrossCountry knew that any such trade secrets were acquired through improper means.

- Count Three's common-law tort claim that CrossCountry "converted" Caliber's confidential and proprietary information is pre-empted by the Uniform Trade Secrets Act, RCW 19.108.900.

- Counts Four and Six, both of which assert tortious interference, contain no factual allegation whatsoever of any role that CrossCountry had in any alleged scheme, let alone an intentional act of interference with Caliber's business relationships.

- Similarly, Count Five—for aiding and abetting departing employees' breach of fiduciary duty—fails to allege that CrossCountry knew about and substantially assisted the departing employees' breaches.  Further, Caliber utterly fails to identify even a single customer who declined to do business with Caliber as a result of the alleged scheme, which is fatal to the damages element not only of Count Five but also Counts Four and Six.

- Lastly, because Caliber fails to state a plausible claim on any of its first six Counts, Count Seven for civil conspiracy is legally deficient and cannot proceed. But, even if Count Seven had alleged a requisite underlying actionable claim, it would still be defective in its own right, as Caliber's allegations about a combination between CrossCountry and departing Caliber employees are utterly conclusory.

For these reasons, and for the additional reasons set forth below, the Complaint should be dismissed in its entirety for failure to state a claim under Rule 12(b)(6).

## **THE COMPLAINT**[1]

Despite purporting to cover the departure of more than 80 former Caliber employees across 18 branch offices in six states, Caliber's Complaint delves into non-superficial detail about the departure of ***only one*** Caliber employee, Mark Everts, a branch manager in Seattle.

---

[1] In accordance with Rule 12(b)(6), CrossCountry treats the Complaint's well-pleaded allegations as true solely for purposes of this Motion.

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 2

JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

STOEL RIVES
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

1    (Compl. ¶¶ 1, 3.)  As a condition of his employment at Caliber, Everts was prohibited from

2    "soliciting or encouraging any of [Caliber's] employees to discontinue their employment" with

3    Caliber.  (*Id.* ¶ 40.)

4          In December 2021, Everts left Caliber to work as a Regional Vice President for

5    CrossCountry in Bothell, Washington.  (*Id.* ¶ 33(a).)  Roughly two weeks before his departure,

6    Mr. Everts sent a message from his own personal email address to *his own* Caliber email address.

7    (Compl. Ex. A.)  In the email, Everts records his thoughts about leaving Caliber to join

8    CrossCountry.  (*Id.*)  But Caliber doesn't take issue with Everts's departure for CrossCountry

9    and cites no non-competition agreement prohibiting his departure.  Rather, Caliber focuses on

10    Everts's notes about his "connections" at his Caliber branch.  (*Id.*)  Everts's email to himself

11    describes a few of these "connections" as "loyal to" him, and one of whom Everts stated "would

12    for sure jump if she knew [Everts] was on board."  (*Id.*)  Everts concluded this self-addressed

13    email message by writing that any offer he received to come work at CrossCountry "would have

14    to so outweigh the offer to stay that it [made] sense to go thru the rig-a-ma-roll . . . of uprooting

15    [his] team and going elsewhere."  (*Id.*)

16          On its face, this email shows that it was not sent to CrossCountry.  (*Id.*)  Yet, Caliber,

17    with actual facts in short supply, makes this email the centerpiece of its Complaint, defining it as

18    *CrossCountry's* "Master Plan"—a term conveniently chosen unilaterally by Caliber—which

19    Caliber characterizes as "spell[ing] out" CrossCountry's "methods and intentions" to raid

20    Caliber's employees on a national scale.  (*Id.* ¶ 24.)  This unexplained attribution of the words

21    and actions of others to CrossCountry is an appropriate primer for the rest of the Complaint.

22    Using Everts's email to himself in Washington state as a jumping off point, Caliber goes on to

23    describe employee resignations from Oregon to Florida, all supposedly according to

24    CrossCountry's "Master Plan."  (*Id.* ¶ 35.)  Tellingly, the Complaint never explains how Everts's

25    note to himself about a handful of people in Everts's own Washington-based branch could have

26    described such a far-flung scheme by CrossCountry.

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 3

JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

STOEL RIVES
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

1        Indeed, the allegations about employees outside Mr. Everts's branch are remarkably bare

2  bones.  Caliber does not allege that Everts ever spoke to or even knew these other Caliber

3  employees, let alone solicited them to leave Caliber for CrossCountry.  Even worse, the

4  Complaint does not even bother to name or otherwise describe *at all* the alleged 40 members of

5  support staff who Caliber claims departed for CrossCountry, let alone describe how their

6  decision to leave Caliber was at all wrongful.  (*Id.* ¶ 36.)

7        Further, Caliber's allegations about CrossCountry's role in the employee departures are

8  utterly conclusory.  Without any explanation, Caliber simply asserts that CrossCountry "was

9  aware of, or reasonably should have been aware of, the Departed Employees restrictive

10  covenants and other legal obligations" and "encouraged and induced the Departed Employees to

11  breach" those obligations.  (*Id.* ¶ 70.)

12        Caliber further devotes nearly ten pages of the Complaint to describing how certain

13  Departed Employees at Everts's branch sent borrower information from their Caliber email

14  addresses to their personal email addresses before leaving for CrossCountry.  (*Id.* ¶ 76.)  But

15  these allegations offer no facts suggesting that CrossCountry ever received any of that

16  information or that, if CrossCountry did receive any such information, that CrossCountry knew

17  of its allegedly improper origin.  Instead, Caliber nakedly asserts that "the Departed Employees

18  misappropriated the above described confidential information acting in concert with

19  CrossCountry and with its knowledge and approval" and that "the Departed Employees have

20  used the misappropriated information on behalf of, and for the benefit of, CrossCountry."  (*Id.*

21  ¶¶ 77–78.)

22        Finally, Caliber claims to have lost a staggering $2.3 billion in revenue which Caliber

23  (again without explanation) believes it "had a reasonable expectation of receiving on an annual

24  basis."  (*Id.* ¶¶ 83–84.)  Yet, in the face of that number, Caliber does not identify ***any*** diverted

25  loans that resulted from the alleged scheme, instead hanging its hat on a single allegedly

26

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 4

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

1  "unauthorized credit pull" for a borrower who, by Caliber's own admission, was **not** diverted

2  because he or she "was not comfortable using any other lender" than Caliber.  (*Id.* ¶¶ 80–81.)

3  　　　　Based on these allegations, Caliber asserts seven Counts against CrossCountry:

4  　　　　(1)  Unfair Competition;

5  　　　　(2)  Misappropriation of Trade Secrets under the Defend Trade Secrets Act;

6  　　　　(3)  Conversion of Confidential and Proprietary Information;

7  　　　　(4)  Tortious Interference with Contract;

8  　　　　(5)  Tortious Inducement to Breach Fiduciary Duty of Loyalty;

9  　　　　(6)  Tortious Interference with Advantageous Business Relationships; and

10  　　　　(7)  Civil Conspiracy.

11  (*Id.* ¶¶ 91–156.)

12  　　　　　　　　　　　　　　**ARGUMENT**

13  　　　　Under Rule 12(b)(6), dismissal is warranted when a complaint fails to "state a claim to

14  relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When

15  measuring a Complaint's allegations against the plausibility standard, courts "begin by

16  identifying [factual allegations] that, because they are no more than conclusions, are not entitled

17  to the assumption of truth," including "threadbare recitals of the elements of a cause of action,

18  supported by mere conclusory statements.'" *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003

19  (9th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations

20  omitted)).  Similarly, courts "need not accept as true legal conclusions" included in the

21  Complaint, even if they are "couched as factual allegations." *Wilson v. Craver*, 994 F.3d 1085,

22  1090 (9th Cir. 2021).  Such legal conclusions include make-weight "bald allegations of [an]

23  impermissible motive on the [Defendant's] part." *Moss v. U.S. Secret Service*, 572 F.3d 962, 970

24  (9th Cir. 2009).

25  　　　　With these conclusory allegations trimmed away, "[t]o survive a motion to dismiss, a

26  complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 5

116083441.3 0077407-00001

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

*plausible* on its face; that is, plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Telesaurus*, 623 F.3d at 1003 (quoting *Iqbal*, 556 U.S. at 678) (emphasis added). In the Rule 12(b)(6) context, the Ninth Circuit has repeatedly emphasized the difference between plausibility and mere possibility. *See, e.g.*, *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). Particularly where, as here, a Complaint attributes an illicit motive to otherwise innocent business conduct, plaintiffs cannot coast past a Rule 12(b)(6) motion by "offer[ing] allegations that are 'merely consistent with' their favored explanation" when those allegations "are also consistent with [an] alternative explanation." *Id.* (citing *Iqbal*, 556 U.S. at 678). Rather, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Props. E., LLC v. Marcus & Millichap*, 751 F.3d 990, 998 (9th Cir. 2014).

Because none of the Complaint's seven Counts do anything to "exclude the possibility" that CrossCountry's merely engaged in innocent business conduct, Caliber's allegations fail to clear the plausibility bar. *Eclectic Props.*, 751 F.3d at 998. Accordingly, the Complaint should be dismissed in its entirety.

## I.    The Complaint Fails to State a Claim for Unfair Competition (Count One).

The Complaint does not specify whether Caliber's unfair-competition claim is based in statute or common law. Washington courts, however, generally evaluate such claims under the Unfair Business Practices Act, RCW 19.86.920. *See Evergreen Moneysource Mortg. Co. v. Shannon*, 274 P.3d 375, 384–85 (Wash. Ct. App. 2012) (analyzing an unfair-competition claim against an employee who departed a mortgage loan company under the Unfair Business Practices Act). To state a claim under that Act, Caliber must plausibly allege (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) an injury to a plaintiff's business or property; and (5) causation. *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 6

116083441.3 0077407-00001

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

719 P.2d 531, 533 (Wash. 1986)).  Caliber's factual allegations fall far short of at least the first, third, and fourth elements of this claim.

Starting with the first element—an unfair or deceptive act or practice by CrossCountry—Caliber must show through factual allegations "that the act in question . . . had the capacity to deceive a substantial portion of the public."  *Brown ex rel. Richards v. Brown*, 239 P.3d 602, 608 (Wash. Ct. App. 2010) (quoting *Hangman Ridge*, 719 P.2d at 531).  Yet the *lone* factual allegation Caliber advances in support of this element is an "unauthorized credit pull" of a single unnamed individual who had been working with Nikki Benson, one of the employees who had left Caliber.  (Compl. ¶¶ 80–82.)  Specifically, Caliber alleges that the individual's credit was pulled without authorization and then that "someone from CrossCountry (on Nikki Benson's team) reached out to the borrower and asked the borrower to switch over to use CrossCountry for the loan."  (*Id.* ¶¶ 80–81.)  As a matter of simple logic, however, any deception accompanying that alleged series of events would only been committed by the former Caliber employees before they left Caliber—not CrossCountry—in originally leading the borrower to believe that the borrower's information was going to be used to pull credit for a Caliber loan, as opposed to a loan at those employees' next employer.  Not surprisingly, therefore, the Complaint "fail[s] to allege any specific deception or deceptive acts" *by CrossCountry*, which is fatal to Caliber's claim.  *Evergreen*, 274 P.3d at 384.

And even if the Complaint could allege that CrossCountry engaged in a deceptive act as to the credit pull for the single borrower identified, the unfair-competition claim would still fail as a matter of law because the Complaint cannot possibly make the requisite allegation that this single act "had the capacity to deceive a substantial portion of the public."  *Brown*, 239 P.3d at 608.  Likewise, Caliber's assertion that "CrossCountry's actions also have caused, and will cause, confusion for customers" (*id.* ¶ 98) is a quintessentially "threadbare recital" of the elements of an unfair-competition claim that does not come close to passing muster under Rule 12(b)(6).  *Telesaurus*, 623 F.3d at 1003 (quoting *Iqbal*, 556 U.S. at 678).

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 7

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-000001

1    For similar reasons, Caliber also fails to allege facts supporting the third element of an

2    unfair-competition claim, which requires some impact on the public interest.  *Panag*, 204 P.3d at

3    889.  Washington courts have recognized that "conduct that is not directed at the public, but,

4    rather, at a competitor, lacks the capacity to impact the public in general."  *Evergreen*, 274 P.3d

5    at 385 (citing *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628 (Wash Ct. App.

6    1997)).  Simply put, "it is the likelihood that additional plaintiffs have been or will be injured ***in***

7    ***exactly the same fashion*** that changes a factual pattern from a private dispute into one that

8    affects the public interest.  *Id.* (quoting *Hangman Ridge*, 719 P.2d at 531) (emphasis added).

9    The Complaint contains ***zero*** factual allegations that Caliber itself was the victim of any

10   unlawful employee or customer raiding, let alone that other plaintiffs are likely to be injured in

11   the same way Caliber alleges it was injured by CrossCountry.  Caliber's *ipse dixit* that

12   CrossCountry has a "pattern and practice" of raiding competitor's employees is plainly

13   insufficient.  Further, to the extent Caliber seeks to vindicate the interests of the allegedly

14   confused borrower discussed above, its claim also fails as a matter of law because Caliber was

15   not injured by CrossCountry in "exactly the same fashion" as the borrower allegedly was.  *See*

16   *Zunum Aero, Inc. v. Boeing Co.*, Case No. C21-0896JLR, 2022 WL 2116678, at *12 (W.D.

17   Wash. June 13, 2022) (dismissing an unfair competition claim because "the fashion in which

18   Boeing has allegedly harmed Zunum is far from 'exactly the same' as the fashion in which

19   Zunum alleges Boeing's misconduct has or could harm the general public").

20   As to the fourth element, Caliber does not—and cannot—allege any injury or damage

21   arising from the single credit pull, as the Complaint admits that the borrower at issue "was not

22   comfortable using any other lender" (Compl. ¶ 81), and nowhere alleges that the borrower did

23   *not* close his or her loan with Caliber.

24   Accordingly, Count One fails to allege facts supporting the deception, public-interest-

25   impact, and injury elements of an unfair-competition claim under Washington law, and should be

26   dismissed.  *See*, *e.g.*, *Zunum*, 2022 WL 2116678, at *12.

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 8

116083441.3 0077407-00001

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## II.     The Complaint Fails to State a Claim Under the Defend Trade Secrets Act (Count Two).

To establish a claim under Defend Trade Secrets Act, a plaintiff must plausibly allege: "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020).  Caliber grounds its trade secrets claim entirely in a series of emails that a few of the Departing Employees allegedly sent from their Caliber email addresses to their personal email addresses. (*See* Compl. ¶ 76.)  These emails allegedly contained non-public customer information that the Caliber employees were prohibited by their employment agreements from sharing with third parties, including CrossCountry.  (*Id.*)  But, even assuming that this information constituted trade secrets and that their disclosure could injure Caliber, Caliber does not allege that anyone at *CrossCountry* ever received or even knew about such emails.

Critically, nothing in Caliber's Complaint comes close to alleging any fact raising a plausible inference that *CrossCountry itself* misappropriated Caliber's trade secrets for purposes of the Act.  The Act defines  "misappropriation" as the "acquisition," "disclosure," or "use" of a trade secret by a person "who knows or has reason to know that the trade secret was acquired by improper means."  18 U.S.C. § 1839(5).  "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  18 U.S.C. § 1839(6).  Caliber alleges that CrossCountry knew that Caliber employees were generally required to sign confidentiality agreements.  But Caliber's sole allegation that CrossCountry knew or should have known that the employees *violated* these provisions is a prime example of a make-weight conclusion:  "Upon information and belief, the Departed Employees misappropriated the above described confidential information acting in concert with CrossCountry and with its knowledge and approval, if not with its specific direction." (Compl. ¶ 77.)

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 9

116083441.3 0077407-00001

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

Under Ninth Circuit (and Supreme Court) precedent, this allegation is not entitled to the assumption of truth.  *Telesaurus*, 623 F.3d at 1003 (quoting *Iqbal*, 556 U.S. at 678).  "Trimmed of legal conclusions and threadbare recitals of a cause of action," as it must be, *Eclectic Props.*, 751 F.3d at 998, Caliber's misappropriation claim again rests solely on the anecdote about the prospective Caliber buyer whose credit was pulled without authorization.  (Comp. ¶¶ 80–82.)  But the mere fact that "someone at CrossCountry" contacted a prospective Caliber borrower does nothing to show that CrossCountry knew that the information CrossCountry had about that borrower "was acquired by improper means."  18 U.S.C. § 1839(5).  Beyond rotely asserting that the Departing Employees "misappropriated information on behalf of, and for the benefit of, CrossCountry" (*id.* ¶ 78), Caliber alleges no facts regarding CrossCountry's knowledge of the information's origin.

District courts in this Circuit, including this Court, have found misappropriation allegations insufficient at the motion to dismiss stage in departing-employee cases with similar facts.  For instance, in *CleanFish, LLC v. Sims*, the court explicitly declined to infer misappropriation by the defendant competitor from the mere allegation that the departing employee took confidential information with him when he resigned to begin working with the competitor:

> Plaintiff does not allege any factual basis to support the conclusion that the ISF Defendants knew that the information Defendant Sims provided (for example, customer lists or identities) was actually Plaintiff's, knew that it was protectable, or knew that Defendant Sims acquired it through improper means. Nor does the [complaint] plead how the ISF Defendants could have known as much. Conclusory allegations that the ISF Defendants "contacted and continuously communicated with Sims, while Sims was employed by Plaintiff" are insufficient to plead that the ISF Defendants knew that any information Defendant Sims communicated to them contained trade secrets.

Case No. 19-cv-3663-HSG, 2020 WL 1274991, at *10 (N.D. Cal. March 17, 2020).

In reaching that conclusion, the court relied on Ninth Circuit's decision in *Eclectic Properties* holding that plaintiffs cannot survive a Rule 12(b)(6) motion by "offer[ing]

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 10

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

allegations that are merely consistent with their favored explanation but are also consistent with an innocuous explanation." *Id.* (quoting *Eclectic Props.*, 751 F.3d at 997).  In short, the *CleanFish* court declined to infer misappropriation by the ***new employer*** from the mere allegation that the ***departing employee*** inappropriately took trade secrets with him when he resigned his former employment with the plaintiff.  Rather, the court held, plaintiffs in such cases "must allege facts that . . . tend to exclude an innocent explanation" for the conduct alleged.  *Id.* (quoting *Veronica Foods Co. v. Ecklin*, No. 16-CV-07223-JCS, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (alterations omitted)).  Because the complaint in that case did nothing to exclude the possibility that the departing employee misappropriated the plaintiff's trade secrets without the new employer's knowledge, the court found that the plaintiff's misappropriation claim was not plausible under *Iqbal* and *Twombly*. *Id.*; *accord Inteum Co., LLC v. Nat. Univ. of Singapore*, Case No. C17-1252-JCC, 2017 WL 6611961, at *3–4 (W.D. Wash. Dec. 27, 2017) (dismissing a misappropriation claim where the plaintiff pled facts "indicat[ing] motive, opportunity, and a possibility of improper disclosure or transfer of protected software or information, but no more").

The reasoning in *CleanFish* and *Veronica Foods* applies squarely here.  Caliber alleges only that the Departing Employees took trade secrets with them before leaving for CrossCountry. From there, Caliber simply asks the Court to speculate that CrossCountry must have known about and encouraged such conduct.  But such conjecture is inappropriate under governing law. Because Count Two fails to plead facts that "tend to exclude the innocent explanation" that the Departing Employees misappropriated Caliber's trade secrets without CrossCountry's knowledge, Caliber fails to plead a plausible Defend Trade Secrets Act claim against CrossCountry.  *CleanFish*, 2020 WL 1274991, at *10.

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 11

116083441.3 0077407-00001

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

**III.   Because the Caliber Alleges that CrossCountry Misappropriated Trade Secrets, Caliber's Claim for Conversion of Confidential and Proprietary Information (Count Three) is Pre-Empted As a Matter of Law.**

This Court has held on multiple occasions that common-law conversion claims regarding "misappropriation and conversion of confidential and proprietary information" are pre-empted by the Uniform Trade Secrets Act, RCW 19.108.900. *See, e.g.*, *Illinois Tool Works, Inc. v. Seattle Safety, LLC*, Case No. C07-2061JLR, 2009 WL 10675668, at *2 (W.D. Wash. Jan. 28, 2009) (citing *LaFrance Corp. v. Werttemberger*, Case No. C07-1932Z, 2008 WL 5068653, at *3 (W.D. Wash. Nov. 24, 2008)).  Because Caliber's misappropriation claims center around "confidential and proprietary information," its conversion claim is pre-empted and should be dismissed. *Id.*

Caliber seems to acknowledge that its conversion claim is pre-empted, alleging that this claim is being asserted in the alternative. (*See* Compl. ¶ 117).  That is not permissible.  Pre-empted claims are not consolation prizes; rather, they have been abrogated by statute. *See* RCW 19.108.900(1) ("This chapter displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret.").  Because Caliber's conversation claim in Count Three is on its face a claim that revolves around "confidential and proprietary information," it should dismissed as pre-empted.

**IV.   The Complaint Fails to State a Claim for Tortious Interference with Contract (Count Four).**

Likewise defective is Caliber's claim that CrossCountry tortiously interfered with the employment agreements of the Departing Employees.  To state a tortious interference with contract claim, the plaintiff must plausibly allege: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Pleas v. City of Seattle*, 774 P.2d 1158, 1162 (Wash. 1989).

DEFENDANT CROSSCOUNTRY MORTGAGE, LLC's MOTION TO DISMISS THE COMPLAINT, 2:22-CV-00616-RAJ - 12

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

1  Measured against this standard, Caliber fails to plead any facts regarding the third element—that

2  any action *by CrossCountry* caused the Departing Employees to breach their Caliber

3  employment agreements.

4      Caliber sets forth three theories of tortious interference:  that CrossCountry "induc[ed]

5  and encourage[ed] the Departed Employees to breach their contracts with Caliber by

6  (1) soliciting Caliber employees to terminate their employment relationship with Caliber;

7  (2) diverting, converting, and removing loans in process at Caliber to take them to CrossCountry;

8  and (3) retaining, and using Caliber's Confidential Information." (Compl. ¶ 128.)  But each of

9  these theories remains entirely unsupported by any concrete factual allegations that "tend to

10  exclude" the inference that the Departed Employees acted unilaterally in committing any alleged

11  breach. *Eclectic Props.*, 751 F.3d at 998.

12      At the outset, as discussed, Caliber alleges no facts in support of its theory that

13  CrossCountry "induc[ed] and encourage[ed]" the Departing employees to retain or use Caliber's

14  confidential or proprietary information.  Indeed, the only assertion Caliber offers on that score is

15  the boilerplate "that the Departed Employees misappropriated [Caliber's] confidential

16  information acting in concert with CrossCountry and with its knowledge and approval, if not

17  with its specific direction." (Compl. ¶ 77.)  Caliber does nothing to support that assertion with

18  any actual facts, leaving that theory fatally defective.

19      Turning to the remaining two theories, Caliber asserts that CrossCountry induced

20  employees to solicit their co-workers to join them in leaving for CrossCountry and in diverting

21  loans.  (*Id.*)  While this is the area where Caliber's Complaint devotes the most discussion, it is

22  nevertheless implausible on its face.  The centerpiece of the claim is Mark Everts's December

23  2021 email to himself before he departed Caliber for CrossCountry.  In that email, Everts

24  described a few of his "connections" at his Caliber branch that were "loyal to" him, and one of

25  whom Everts stated "would for sure jump if she knew [Everts] was on board." (Compl. Ex. A.)

26  Everts also concluded this self-addressed message by writing that any offer he received to come

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 13

116083441.3 0077407-00001

JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

STOEL RIVES
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

1   work at CrossCountry "would have to so outweigh the offer to stay that it [made] sense to go

2   thru the rig-a-ma-roll . . . of uprooting [his] team and going elsewhere." (*Id.*)

3   As discussed, the face of the email, which Caliber has attached as an exhibit and

4   incorporated into its Complaint, shows that it was *not* sent to anyone at CrossCountry. (*See id.*)

5   And Caliber's allegation otherwise is contradicted by the exhibit, and therefore cannot be

6   accepted. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014)

7   ("Although we normally treat all of a plaintiff's factual allegations in a complaint as true, we

8   need not accept as true allegations that contradict matters properly subject to judicial notice or by

9   exhibit.") (internal quotations and alterations omitted).

10   Further, even if this email had been sent to CrossCountry, the Complaint nowhere

11   includes any factual allegation suggesting that CrossCountry ever approved or adopted anything

12   Mr. Everts wrote.  In fact, there is no reason to believe that the notes Mr. Everts recorded in the

13   email reflect the thoughts of anyone other than Mr. Everts.  Yet, Caliber inexplicably leaps to the

14   conclusion that this email is *CrossCountry*'s "Master Plan," which "spelled out" *CrossCountry*'s

15   "methods and intentions."  (*Id.* ¶ 24.)  From there, Caliber simply attaches Evert's offer letter

16   from CrossCountry describing Everts's salary, signing bonus, and a performance incentive for

17   the new CrossCountry branch he would be opening.  (*Id.* Ex. B.)  This, without more, constitutes

18   the entirety of Caliber's factual basis for its claim that CrossCountry orchestrated a national

19   scheme to raid 80 Caliber employees in six states.  Indeed, Caliber pleads virtually *no* details at

20   all regarding the departure of Caliber employees outside Everts's own branch.

21   To be clear, Caliber does not—and cannot—allege that it was unlawful for CrossCountry

22   merely to hire Caliber employees.  Caliber certainly does not allege that any of the Departed

23   Employees was subject to any non-compete covenant.  There is nothing at all unlawful about

24   recruiting and hiring a competitor's employees.  Nor is there anything wrong with offering a

25   bonus for reaching a revenue goal.  Caliber's tortious-interference claim, therefore, must rely on

26   the assertion that CrossCountry acted unlawfully by inducing Caliber employees to solicit their

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 14

116083441.3 0077407-00001

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

1   co-workers to leave with them.  In other words, Caliber's tortious-interference claim asks the

2   Court to ignore all of the most plausible innocent explanations (as to CrossCountry) that 80

3   employees left Caliber for CrossCountry—*e.g.*, that CrossCountry recruited each employee

4   directly; that many employees followed other employees without any solicitation from fellow

5   employees; or even that employees solicited other employees without any involvement by

6   CrossCountry—and instead asks the Court simply to assume that such a result could only have

7   been achieved by CrossCountry affirmatively inducing Caliber employees to solicit their fellow

8   employees to leave.

9          Putting aside the strangeness of such a theory, Caliber alleges no facts to support it.

10   Caliber alleges **zero** acts by CrossCountry that "tend to exclude an innocent explanation" that

11   CrossCountry obeyed the law by properly recruiting and hiring Caliber employees.  *CleanFish*,

12   2020 WL 1274991, at *10 (quoting *Veronica Foods*, 2017 WL 2806706, at *14).  Caliber,

13   moreover, does nothing to exclude the equally consistent possibilities that (1) the Departing

14   Employees who allegedly solicited their co-workers did so unilaterally without any involvement

15   or inducement by CrossCountry; or (2) the Departing Employees who were allegedly solicited

16   simply chose to follow their co-workers to CrossCountry without any need for solicitation.

17   Instead, Caliber offers only that many Caliber employees left Caliber for CrossCountry and

18   expects the Court to infer unlawful conduct.  Such an inference is impermissible under governing

19   law.  *Moss*, 572 F.3d at 970 (holding that "bald allegations of [an] impermissible motive on the

20   [Defendant's] part" are insufficient to survive a Rule 12(b)(6) motion).

21          Further, even if Caliber could allege that CrossCountry knew about or approved of any

22   Departing Employees' solicitation of co-workers—it does not—that still would not be enough to

23   plead that CrossCountry engaged in "intentional interference **inducing or causing** a breach" of

24   the employment agreements.  *Pleas*, 774 P.2d at 1161 (emphasis added); *accord Mann Law Grp.*

25   *v. Digi-Net Techs., Inc.*, Case No. C13-00059-RAJ, 2013 WL 3754808, at *4 (W.D. Wash. July

26   15, 2013) (holding that "mere knowledge" of a breach is not sufficient to plead a plausible

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 15

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

tortious interference claim).  Therefore, the Complaint utterly fails to plead facts showing that CrossCountry induced Caliber employees to breach their employee non-solicitation agreements.

As to Caliber's theory that CrossCountry induced the Departing Employees to solicit Caliber's customers, that is by far the most defective of its three tortious-interference theories. Caliber does not allege a single diverted customer or loan.  Rather, as discussed, Caliber alleges that a former Caliber employee reached out to a single prospective Caliber customer and pulled her credit without authorization.  (Compl. ¶¶ 80–82.)  Caliber does not even bother to allege that CrossCountry itself had any knowledge of or role in in this alleged event.  Yet again, the Complaint alleges no facts that tend to exclude innocent explanations for the event—*e.g.*, that CrossCountry was not aware this was a potential Caliber customer—making dismissal appropriate.  *Eclectic Props.*, 751 F.3d at 998.

Simply put, Count Four contains no factual allegations supporting the assertion that CrossCountry induced or caused any Caliber employee to breach his or her employment agreement.  The facts Caliber alleges are equally (or more) consistent with CrossCountry engaging in innocent market behavior.  Because Caliber fails to plead a plausible tortious-interference claim, Court Four should be dismissed. *Id.*

## V.   The Complaint Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty (Count Five).

Caliber's Count Five essentially duplicates the assertions of Count Four.  The only difference is that Court Four is founded on alleged violations of the Departing Employees' employment agreements with Caliber, while Count Five is premised on alleged violations of the Departing Employees' common-law duties to Caliber.

The problem for Caliber is that an aiding-and-abetting claim is even more stringent than a tortious-interference claim:  "To establish a claim of aiding and abetting under Washington law, the [plaintiff] must show (i) the existence of a violation by the primary wrongdoer; (ii) knowledge of this violation by the aider and abettor; and (iii) that the aider and abettor

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 16

116083441.3 0077407-00001

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

1    substantially assisted in the primary wrong."  *Rigby v. Corliss*, Case No. C14-0340-RSL, 2018

2    WL 3608397, at *5 (W.D. Wash. July 27, 2018) (citing *In re Consolidated Meridian Funds*, 485

3    B.R. 604, 616 (Bankr. W.D. Wash. 2013)).[2]

4         Even if Caliber could plead that the Departing Employees committed a "primary wrong,"

5    that CrossCountry knew about—which it does not and cannot do—the Complaint falls woefully

6    short of pleading the substantial-assistance element.  Indeed, Caliber does not try to offer even a

7    conclusory allegation that CrossCountry assisted the employees in any breach of their fiduciary

8    duty.  Count Five should therefore be dismissed as facially deficient.  *See Brashkis v. Hyperion*

9    *Cap. Grp., LLC*, Case No. 3:11-cv-05635-RBL, 2011 WL 6130787, at *3 (W.D. Wash. Dec. 8,

10   2011) (dismissing an aiding and abetting claim for inadequate substantial-assistance allegations).

11   ## VI.   The Complaint Fails to State a Claim for Tortious Interference with Business Expectancy (Count Six).

12        Likewise deficient is Caliber's Count Six, which asserts that CrossCountry "knowingly

13   and intentionally interfered with Caliber's business relationships with its customers and/or

14   prospects regarding their mortgage loan business."  (Compl. ¶ 145.)  "Under Washington law, to

15   plead a claim for tortious interference with a business expectancy, a plaintiff must allege '(1) the

16   existence of a valid contractual relationship or business expectancy; (2) that defendants had

17   knowledge of that relationship; (3) an intentional interference inducing or causing a breach or

18   termination of the relationship or expectancy; (4) that defendants interfered for an improper

19   purpose or used improper means; and (5) resultant damage.'"  *United Federation of Churches,*

20   *LLC v. Johnson*, --- F. Supp. 3d ---, 2022 WL 1128919, at *9 (W.D. Wash Apr. 15, 2022)

21   (quoting *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997)).

22        Caliber fails to plead any of these elements.  As to the first, Caliber's allegation about its

23   "customers and/or prospects" is far too vague to state a plausible tortious interference claim.  *See*

24

25   _____

26   [2] The Complaint does not try to plead, and Washington law does not appear to recognize, a free-standing cause of action for "tortious inducement to breach of fiduciary duty."  (Compl. Count Five.)

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 17

116083441.3 0077407-00001

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

*Pacific Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, 353 n.2 (Wash. 2006) ("In a tortious interference claim, a claimant is required to show a relationship between parties contemplating a contract.  To show a relationship between parties contemplating a contract, it follows that we must know the parties' identities.").  While this precedent does not necessarily require Caliber to name every single potential customer, Caliber must do ***something*** to make those relationships concrete, especially where Caliber's claims span six states and over $2 billion dollars of alleged business.  *See Straw v. Avvo, Inc.*, Case No. C20-0294-JLR, 2020 WL 5066939, at *5 (W.D. Wash. Aug. 27, 2020) (dismissing a tortious interference with business expectancy claim where the plaintiff did "not offer any identifiable third parties—nor explain why he had a reasonable expectancy of fruition with any third parties—beyond the amorphous group of Avvo users").

        As to the second element—knowledge of the relationship allegedly interfered with—Caliber's claim fails for the same reason:  the Complaint's allegations are so vague regarding which customer relationships are at issue that they do not come close to alleging any relationships that CrossCountry had knowledge of.  Such pleading tactics are inherently defective in that they utterly fail to provide CrossCountry with the requisite fair notice it would need to enable it to defend itself effectively.  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

        Likewise as to the third element—intentional interference causing a breach or termination of a relationship or expectancy—Caliber utterly fails to allege any facts suggesting that CrossCountry interfered at all with any of Caliber's customer relationships.  Even for the prospective borrower whose credit was allegedly pulled without authorization, Caliber does not allege that this customer ultimately decided not to close a home loan with Caliber.

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 18

116083441.3 0077407-00001

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

1    For the same reason, Caliber's allegations regarding the final two elements of this claim

2    are similarly defective.  Caliber does not identify a single specific customer relationship that it

3    actually lost, let alone an intentional act by CrossCountry that caused such loss.  Caliber's

4    "threadbare recitals" of the elements of tortious interference claim are plainly inadequate and

5    deserve no further consideration.  *Telesaurus*, 623 F.3d at 1003 (quoting *Iqbal*, 556 U.S. at 679).

6    Count Six should be dismissed.

7    **VII.   The Complaint Fails to State a Claim for Civil Conspiracy (Count Seven).**

8    Perhaps the most deficient of Caliber's claims is Count Seven, which asserts that

9    "CrossCountry conspired with the Departed Employees to violate their legal obligations to

10   Caliber, including their restrictive covenants regarding solicitation of employees,

11   misappropriation of confidential information, and removal of loans in process with Caliber."

12   (Compl. ¶ 152.)  To state a civil conspiracy claim, Caliber must plausibly allege that "(1) two or

13   more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful

14   purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the

15   conspiracy."  *All Star Gas, Inc., of Wash. v. Bechard*, 998 P.2d 367, 372 (Wash. Ct. App. 2000).

16   "Mere suspicion or commonality of interests is insufficient to prove a conspiracy."

17   *Fleming v. Corp. of President of Church of Jesus Christ of Latter Day Saints,* Case No. C04-

18   2338RSM, 2006 WL 753234, *7 (W.D. Wash. Mar. 21, 2006)  And "[w]hen the facts and

19   circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest

20   purpose as with an unlawful undertaking, they are insufficient."  *Puget Sound Sec. Patrol, Inc. v.

21   Bates*, 389 P.3d 709, 714 (Wash. Ct. App. 2017).  Further, under Washington law, "civil

22   conspiracy is not, by itself, an actionable claim."  *Spencer v. Peters*, Case No. C11-5424-BHS,

23   2012 WL 4514417, at *8 (W.D. Wash. Oct. 2, 2012) (citing *W.G. Platts, Inc. v. Platts*, 438 P.2d

24   867 (Wash. 1968)).  Rather, "[t]he plaintiff must be able to show an underlying actionable claim

25   which was accomplished by the conspiracy for the civil claim of conspiracy to be valid."  *Id.*;

26   *accord N.w. Laborers-Employers Health & Sec. Tr. Fund v. Philip Morris, Inc.*, 58 F. Supp. 2d

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 19

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

1211, 1216 (W.D. Wash. 1999) ("In Washington, as elsewhere, a civil conspiracy claim must be premised on underlying actionable wrongs, overt acts, or a tort working damage to the plaintiffs.").

Caliber's civil-conspiracy claim runs afoul of these principles in a variety of ways.  First and foremost, as demonstrated above, Caliber fails to plead a single underlying actionable claim against CrossCountry.  Because a civil-conspiracy claim cannot survive without such underlying claim, Count Seven necessarily fails.  *Spencer*, 2012 WL 4514417, at *8.

Further, even if Caliber could state an actionable underlying claim, its conspiracy allegations are entirely conclusory.  As with the federal pleading standard, Washington's substantive law mandates that, "[w]hen the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient."  *Puget Sound*, 389 P.3d at 714.  The sole concrete act that Caliber alleges that CrossCountry engaged in to further the conspiracy was to pay the Departing Employees "significant financial inducements" to violate their contractual obligations to Caliber.  (Compl. ¶¶ 3, 26.)  But merely paying someone who accepts an offer of employment is entirely "consistent with a lawful or honest purpose."  *Id.*  Indeed, nothing in CrossCountry's offer letter to Mr. Evert (*see* Compl. Ex. B) contemplates Mr. Everts doing anything unlawful or inconsistent with his obligations to Caliber.  And Caliber's self-serving effort to characterize as nefarious a simple bonus for achieving a particular level of loan volume is devoid of logic, let alone plausibility.  Simply put, Caliber's abject failure to plead any allegations that rise above pure speculation renders Count Seven fatally defective.  *Telesaurus*, 623 F.3d at 1003 (quoting *Iqbal*, 556 U.S. at 678).

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 20

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

1

## CONCLUSION

2     For the foregoing reasons, the Complaint fails to state any claim against CrossCountry.

3  Accordingly, all seven Counts should be dismissed under Rule 12(b)(6).

4  Dated:  July 11, 2022                          Respectfully submitted,

5                                                 JONES DAY

6

7                                                 *s/ Michael A. Platt*
                                                  Michael A. Platt (admitted *pro hac vice*)
8                                                 North Point
                                                  901 Lakeside Avenue
9                                                 Cleveland, Ohio  44114-1190
                                                  Tel:  (216) 586-3939
10                                                Fax:  (216) 579-0212
                                                  Email:      maplatt@jonesday.com
11

12                                                STOEL RIVES LLP

13
                                                  *s/ James M. Shore*
14                                                James M. Shore, WSBA #28095
                                                  600 University Street, Suite 3600
15                                                Seattle, WA  98101
                                                  Tel: (206) 624-0900
16                                                Fax: (206) 386-7500
                                                  Email:      jim.shore@stoel.com
17

18                                                *Counsel for Defendant*
                                                  *CrossCountry Mortgage, LLC*
19

20

21

22

23

24

25

26

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 21

**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

**STOEL RIVES**
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-00001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which in turn automatically generates a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice.

*s/ Brie Carranza*
Brie Carranza,
Litigation Practice Assistant

DEFENDANT CROSSCOUNTRY
MORTGAGE, LLC's MOTION TO DISMISS
THE COMPLAINT, 2:22-CV-00616-RAJ - 22

JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
*Telephone:  9216) 586-3939*

STOEL RIVES
ATTORNEYS
600 University Street, Suite 3600,
Seattle, WA  98101
*Telephone 206.624.0900*

116083441.3 0077407-00001