THE HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7

8    UNITED STATES DISTRICT COURT
9    WESTERN DISTRICT OF WASHINGTON AT SEATTLE

10   CALIBER HOME LOANS, INC.,

11              Plaintiff,

12       v.

13   CROSSCOUNTRY MORTGAGE, LLC,

14              Defendant.

No. 2:22-CV-00616-RAJ

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

**NOTE ON MOTION CALENDAR: August 5, 2022**

**ORAL ARGUMENT REQUESTED**

15
16
17
18

19       Plaintiff, Caliber Home Loans, Inc. ("Caliber"), hereby submits the following

20   Opposition to the Motion to Dismiss the Complaint ("Motion") of Defendant, CrossCountry

21   Mortgage, LLC ("CrossCountry"). Caliber's Complaint contains sufficient factual allegations

22   to put CrossCountry on notice of Caliber's claims and, treated as true, state claims for relief

23   that are plausible on their face and allow the Court to draw the reasonable inference of

24   liability. For the reasons stated herein, Caliber has pleaded sufficient facts and causes of

25   action under the applicable legal standard and, therefore, respectfully requests that the Court

26   deny CrossCountry's Motion. Alternatively, Caliber should be granted leave to amend the

27   Complaint.

28

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES................................................................................ii

I.    INTRODUCTION ....................................................................................1

II.   ALLEGATIONS OF THE COMPLAINT .............................................4

      A.  The Departed Employees' Agreements ........................................4

      B.  CrossCountry Conspired to Solicit Caliber's Employees ..................5

      C.  Caliber Conspired to Unlawfully Compete with Caliber
          Through Misappropriation................................................................6

      D.  Caliber Suffered Damages Because of the Unlawful Conduct ...........7

III.  LEGAL STANDARD FOR A MOTION TO DISMISS .............................7

IV.   LEGAL REASONING ................................................................................8

      A.  Caliber's Complaint States a Plausible Claim for Unfair
          Competition (Count I) ......................................................................8

      B.  Caliber's Complaint States a Plausible Claim for
          Misappropriation Under the Defend Trade Secrets Act
          of 2016 (Count II)............................................................................10

      C.  Caliber's Complaint States a Plausible Claim for Conversion
          of Confidential and Proprietary Information (Count III) ....................13

      D.  Caliber's Complaint States a Plausible Claim for Tortious
          Interference with Contract (Count IV) .............................................15

      E.  Caliber's Complaint States a Plausible Claim for Aiding
          and Abetting Breach of Fiduciary Duty (Count V) ............................18

      F.  Caliber's Complaint States a Plausible Claim for
          Tortious Interference with a Business Expectancy (Count VI)............20

      G.  Caliber's Complaint States a Plausible Claim for
          Civil Conspiracy (Count VII)...........................................................22

V.    CONCLUSION ..........................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - i*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allstate Indem. Co. v. Lindquist*,
   2022 U.S. Dist. LEXIS 116149 (W.D. Wash. 2022) (unpublished) ........................... 8

*Ames v. Ames*,
   2016 Wash. App. LEXIS 1391 (Wash. Ct. App. 2016) (unpublished) ...................... 15

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ........................................................................................ 7

*Attia v. Google LLC*,
   983 F.3d 420 (9th Cir. 2020) ............................................................................. 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 7

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) ................................................................................. 8

*Calvert v. Zions Bancorporation (In re Consol. Meridian Funds)*,
   485 B.R. 604 (Bankr. W.D. Wash. 2013) ............................................................ 19

*CleanFish, LLC v. Sims*,
   2020 U.S. Dist. LEXIS 46191 (N.D. Cal. 2020) (unpublished) ....................... 12, 13

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ............................................................................... 8

*Evergreen Moneysource Mortg. Co. v. Shannon*,
   167 Wn. App. 242 (Wash. Ct. App. 2012) ........................................................... 10

*Fanucchi & Limi Farms v. United Agr. Prods.*,
   414 F.3d 1075 (9th Cir. 2005) ............................................................................. 8

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997) ............................................................................... 8

*Hawthorne Hangar Operations, L.P. v. Hawthorne Airport*,
   2021 U.S. Dist. LEXIS 103596 (C.D. Cal. 2021) (unpublished) ............................. 7

*LaFrance Corp. v. Werttemberger*,
   2008 U.S. Dist. LEXIS 98741 (W.D. Wash. 2008) (unpublished) .......................... 14

*LaHue v. Keystone Inv. Co.*,
   6 Wn. App. 765 (Wash. Ct. App. 1972) .............................................................. 18

*LaRock v. Kunchick*,
   2015 Wash. App. LEXIS 779 (Wash. Ct. App. 2015) (unpublished) ...................... 14

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - ii*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

# TABLE OF AUTHORITIES

Page(s)

*Leingang v. Pierce Cty. Med. Bureau, Inc.*,
    131 Wn.2d 133 (Wash. 1997)..........................................................................................20

*U.S. v. Redwood City*,
    640 F.2d 963 (9th Cir. 1981) .......................................................................................... 8

*Vanguard Int'l v. Guangdong Fully*,
    2008 Wash. App. LEXIS 58 (Wash. Ct. App. 2008) (unpublished) ........................... 18

**STATUTES**

18 U.S.C. § 1836, et seq., Defend Trade Secrets Act of 2016 ............................................ 10

18 U.S.C. § 1839 ................................................................................................................ 11

Unfair Business Practices Act, RCW 19.86.020 ................................................................. 8

Uniform Trade Secrets Act, RCW 19.108.900................................................................... 13

**RULES**

Fed. R. Civ. P. 8 ............................................................................................................ 7, 14

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - iii*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Although CrossCountry professes to treat as true the well-pleaded allegations in Caliber's Complaint, it does precisely the opposite.  CrossCountry ignores the numerous, distinct factual allegations supporting Caliber's claims against CrossCountry and, by doing so, offers fallacious legal arguments to Caliber's claims. CrossCountry's argument that Caliber does not assert any plausible allegations of misconduct by CrossCountry not only strains credulity, it is in fact erroneous under the well-established applicable law.

As alleged in the Complaint, Cross Country systematically targeted a massive number of Caliber employees for hire and did so with full knowledge of the former Caliber employees' restrictive covenants (*e.g.*, non-solicitation of employees; non-disclosure of confidential information). As further alleged in the Complaint, for the benefit of, at the behest of, or at the outright direction of CrossCountry, the former Caliber employees solicited one another to leave Caliber for CrossCountry and misappropriated Caliber's confidential and proprietary information (including pipeline data). CrossCountry's position that it was not involved in the misappropriation and had no knowledge of the Caliber employees soliciting one another in violation of their agreements is not only implausible, for purposes of its Motion, it is irrelevant because it directly contradicts to the well-pleaded factual allegations set forth in Caliber's Complaint. For instance, CrossCountry—by its own count—admits to having poached an eye-popping 80 Caliber employees across multiple states and to paying them "better compensation" to lure them to CrossCountry (Motion at p. 1) with the specific purpose to wrongfully take customers in violations of contractual agreements and legal obligations. This misconduct is not ordinary competition. As alleged in the Complaint, CrossCountry had little market presence in the Pacific Northwest. As a quick fix, it set out to steal Caliber's ripe and robust business.

*Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint - 1 (2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

Even without the benefit of discovery, Caliber attached to its Complaint incriminating evidence supporting its allegations and demonstrating CrossCountry's participation in the unlawful conduct—in particular the "Master Plan" (Exhibit "A" to the Complaint) authored by Mark Everts for CrossCountry's Executive Vice President, Scott Forman. The Master Plan is part of an email chain between Everts and Forman and most certainly does not read like simple "records of [Everts's] thoughts about leaving Caliber to join CrossCountry." *See* Motion at p. 3. The Master Plan, rather, reads like a well-developed and thought-out conspiracy between Everts and CrossCountry to solicit Caliber employees to leave Caliber for CrossCountry, so long as the financial inducement for Everts was sufficiently high (*i.e.*, a $1,000,000 sign-on bonus and an additional volume bonus of $500,000). Those facts at this stage are uncontroverted. The Master Plan sets out a clear "pay for play" scheme to pirate Caliber's employees and business.

Notably, CrossCountry does not deny that Everts sent this email to Forman, or that everything it contemplated happened; CrossCountry argues only that the form in which Caliber presented the email—without the benefit of discovery—is not sufficient evidence of CrossCountry's misconduct. Yet, as alleged in the Complaint, CrossCountry and the former Caliber employees that CrossCountry hired (the "Departed Employees") followed the blueprint described in the Master Plan almost to the letter. It is disingenuous for CrossCountry to come to this Court in light of the Master Plan and contend that it merely engaged in "aggressive (but lawful) competition" or that Caliber has failed to sufficiently allege misconduct on the part of CrossCountry.

CrossCountry tries to minimize and extinguish the incriminating nature of the Master Plan because Caliber does not yet have the full set of communications, along with testimony under oath. Caliber thus relies on the well pled allegations that the Master Plan was implemented by CrossCountry through actions that violate contractual and legal obligations.

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - 2*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

The Master Plan connects the dots and demonstrates that CrossCountry was in lockstep on the illegal scheme. Unfortunately for CrossCountry, Everts was careless enough to have put the Master Plan in writing and send it to his Caliber email account for Caliber to discover. Moreover, Caliber specifically and properly alleges in its Complaint that other communications similar to the Master Plan exist between CrossCountry and other former Caliber employees. The Master Plan—at a bare minimum—makes Caliber's claims "plausible" and CrossCountry's Motion must fail.

Furthermore, throughout its Motion, CrossCountry stands on the faulty premise that Caliber does not rebut the "innocent explanation" for CrossCountry's hiring of 80 Caliber employees within 14 months.  Caliber is not asking the Court to "heap speculation upon speculation." CrossCountry turns a blind eye to the actual well-pleaded allegations of the Complaint:

- CrossCountry had little market presence in the Pacific Northwest prior to its raid of Caliber. *Complaint* at ¶ 85;

- Cross Country was aware of the Departed Employees legal obligations owed to Caliber. *Id.* at ¶ 70;

- Cross County conspired with Everts (and others) as demonstrated in the Master Plan. *Id.* at ¶¶ 24-26;

- CrossCountry knew about the influence Caliber's managers had over other Caliber employees and encouraged and/or directed the managers to use their influence to solicit one another. *Id.* at ¶¶ 71-72;

- CrossCountry offered significant financial incentives to Everts and the other Departed Employees to induce them to breach their legal obligations owed to Caliber. *Id.* at ¶ 29, 34, 87;

- the Departed Employees, as planned, solicited one another to terminate their employment with Caliber in violation of their restrictive covenants, attempted to divert/remove customer loans in breach of their agreements, and misappropriated extensive amounts

*Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint - 3 (2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

of trade secrets for use by CrossCountry in the weeks and days leading up to their resignations. *Id.* at ¶¶ 24-37, 70-76;

- CrossCountry's orchestrated plan was done to harm Caliber's business and convert Caliber's market presence, production ($2.3 billion in annual loan origination), and profits (millions of dollars) to its own, for which Caliber had a reasonable expectation of receiving on an annual basis. *Id.* at ¶¶ 83-86, 96;

- Caliber's trade secrets (*i.e.*, pipeline data and customer lists) are valuable to a competitor. *Id.* at ¶ 54; and

- The Departed Employees misappropriated Caliber's trade secrets and confidential information with CrossCountry's knowledge, approval, if not its specific direction. *Id.* at ¶ 77.

CrossCountry is trying to avoid being held accountable because CrossCountry knows that discovery will inevitably expose massive misconduct. CrossCountry's Motion seeks to delay so that it can continue to raid Caliber employees, as it has continued to hire Caliber employees subsequent to the filing of *Complaint*. As demonstrated herein, the allegations set forth in the Complaint that CrossCountry knew of, benefitted from, and directed the unlawful stealing of Caliber customer information in violation of contractual obligations and applicable law and the corresponding misappropriation of Caliber's Confidential Information, combined with the evidence Caliber already has presented, even at this early stage of the litigation satisfy the liberal pleading standards.

Accordingly, because Caliber has more than sufficiently pleaded each of its claims against CrossCountry, Caliber requests that the Court deny CrossCountry's Motion.

## II.     ALLEGATIONS OF THE COMPLAINT

### A.     THE DEPARTED EMPLOYEES' AGREEMENTS

Caliber has spent significant time, effort, and money to develop, acquire, maintain, and protect its confidential and proprietary business information (the Caliber "Confidential Information"). Complaint at ¶¶ 52-56. Due to their roles in the company, in the scope of their

*Plaintiff's Response in Opposition to
Defendant's Motion to Dismiss the Complaint - 4
(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

employment, Caliber entrusted the Departed Employees with extensive access to Caliber's Confidential Information. *Id.* at ¶ 57. At the commencement of their employment with Caliber, many of the Departed Employees (particularly those in management/supervisor roles) executed restrictive covenants in favor of Caliber that contained non-solicitation of employee, non-disclosure confidentiality provisions, and prohibitions on converting or removing loans in process at Caliber. *Id.* at ¶¶ 38-51 (collectively the "Agreements"). CrossCountry was aware of the existence and terms of the Agreements. *Id.* at ¶ 123. CrossCountry was also aware of the common law duties the Departed Employees owed to Caliber by virtue of their Agreements. *Id.* at ¶ 139.

### B.    CROSSCOUNTRY CONSPIRED TO SOLICIT CALIBER'S EMPLOYEES

CrossCountry acknowledges hiring 80 Caliber employees in 14 months and acknowledges that they offered "better" compensation to induce the Caliber employees to leave Caliber for CrossCountry. Motion at p. 1. CrossCountry, knowing that the Departed Employees had restrictive covenants and other legal obligations owed to Caliber, wrongfully engaged and encouraged the Departed Employees to solicit, encourage, and recruit other Caliber employees to discontinue employment with Caliber and bring confidential client information with them to CrossCountry. Complaint at ¶¶ 70-73. The Master Plan reveals the scheme consisting of a massive hiring spree of Caliber employees in clear violation of the Caliber employee contractual and legal obligations. *Id.* at ¶¶ 24-36.

As further evidenced by the Master Plan, CrossCountry knew the Departed Employees—especially former Caliber managers like Everts—had significant influence over other Caliber employees, could persuade Caliber employees to leave for CrossCountry, and that such influence would be an effective mechanism to solicit other Caliber employees to terminate their employment relationship with Caliber. *Id.* at ¶¶ 71-72. The Master Plan goes so far as to identify two Caliber employees by name—Illingworth and Muqtadir—who Everts

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - 5*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

believed he could influence to leave Caliber for CrossCountry (which he ultimately did). *Id.* at ¶ 25. Then, one day after resigning, Everts—in the scope of his employment with CrossCountry and using Cross Country's email system—solicited a high producing Caliber employee, Danny To, to leave Caliber for CrossCountry with a significant financial inducement of a possible $400,000 sign on bonus that he had discussed with Scott Forman (a CrossCountry Executive Vice President). *Id.* at ¶ 34. Consistent with the Master Plan and beyond, from January 7, 2022 to April 18, 2022, 30 loan originators (plus over 40 support staff that were also recruited and solicited by the producers with whom they worked) resigned and joined CrossCountry. *Id.* at ¶¶ 33, 35-37. And this does not include the 10 Caliber employees CrossCountry had poached in 2021. *Id.* at ¶¶ 20-22.

### C.   CALIBER CONSPIRED TO UNLAWFULLY COMPETE WITH CALIBER THROUGH MISAPPROPRIATION

As alleged in the Complaint, in violation of their contractual obligations and other legal obligations to Caliber, the Departed Employees, at the direction of, and/or for the benefit of CrossCountry, violated their legal obligations to Caliber by misappropriating Caliber's Confidential Information and improperly soliciting Caliber's customers and/or prospects. *Id.* at ¶¶ 74-79, 128, 145. For instance, the Complaint alleges that Everts, Buckles, Granston, Illingworth, Johanson, Lauch, Mallory, Muqtadir, and Medved, at the direction of, and/or for the benefit of CrossCountry, and in direct contravention of their contractual and common law obligations to Caliber, emailed Caliber Confidential Information to their personal email accounts. *Id.* at ¶¶ 76 (a)-(i), 77, 78. One of the Departing Employees, Melanie Pysden, boldly sent a solicitation email *on behalf of CrossCountry* to a contact list of hundreds if not thousands of contacts as she resigned from Caliber. *Id.* at ¶ 37. The solicitation email (which is quoted in the Complaint) makes clear that Pysden orchestrated the departure of her entire team in violation of her non-solicitation obligations, which CrossCountry knew as

*Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint - 6 (2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

CrossCountry had assisted in setting up a "dialed-in" transition plan. *Id.* ("My entire team is joining me, and we have a dialed-in plan to make the transition as seamless as possible."). Further, even without the benefit of discovery the record already shows that CrossCountry pulled a Caliber customer's credit without authorization, Caliber believes that CrossCountry is in possession and control of the misappropriated confidential information. *Id.* at ¶¶ 79-81.

### D.   CALIBER SUFFERED DAMAGES BECAUSE OF THE UNLAWFUL CONDUCT

As alleged in the Complaint, CrossCountry had little market presence in the Pacific Northwest prior to its raid of Caliber. *Id.* at ¶ 85. CrossCountry's orchestrated plan was done to harm Caliber's business and convert Caliber's market presence, production ($2.3 billion in annual loan origination), and profits (millions of dollars) to its own, for which Caliber had a reasonable expectation of receiving on an annual basis. *Id.* at ¶¶ 83-86, 96.

### III.   LEGAL STANDARD FOR A MOTION TO DISMISS

Caliber's Complaint properly satisfies and goes well beyond the familiar plausibility standard of pleading under *Ashcroft v. Iqbal*, 556 U.S. 662(2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citation omitted). "A claim for relief is plausible on its fact when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Twombly*, 550 U.S. at 556.

"The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Hawthorne Hangar Operations, L.P. v. Hawthorne Airport*, 2021 U.S. Dist. LEXIS 103596,

*Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint - 7 (2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

at *7 (C.D. Cal. 2021) (unpublished) (citing *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim."). Dismissal is appropriate only where, taking the factual allegations in the pleading as true and construing them in a light most favorable to the non-moving party, it is certain that the pleader can prove "no set of facts" might entitle it to relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). "Under this rule it is only the extraordinary case in which dismissal is proper." *U.S. v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

With rare exception, a federal court complaint is subject to a "notice pleading" standard. *Fanucchi & Limi Farms v. United Agr. Prods.*, 414 F.3d 1075, 1082 (9th Cir. 2005). Even in the exceptional case where dismissal is warranted, a court must first grant a party leave to amend its complaint unless it is clear that deficiencies cannot be cured by amendment. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

## IV.    LEGAL REASONING

### A.    CALIBER'S COMPLAINT STATES A PLAUSIBLE CLAIM FOR UNFAIR COMPETITION (COUNT I)

Caliber sufficiently pleads its unfair competition claim. To establish a claim for unfair competition under Washington's Unfair Business Practices Act, RCW 19.86.020, a plaintiff must show that (1) an unfair or deceptive act or practice, (2) occurred in the course of trade or commerce, (3) impacted the public interest, (4) injured the plaintiff's business or property, and (5) was caused by the defendant. *Allstate Indem. Co. v. Lindquist*, 2022 U.S. Dist. LEXIS 116149 (W.D. Wash. 2022) (unpublished) (citation omitted).

*Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint - 8 (2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

Here, the Complaint alleges that CrossCountry encouraged and/or directed Caliber employees to solicit each other to terminate their employment with Caliber and leave for CrossCountry in violation of their Agreements, and encouraged and/or directed Caliber employees to misappropriate Caliber's Confidential Information and divert or remove Caliber loans as they left to join CrossCountry. Complaint at ¶¶ 24, 26, 31, 36, 70-73, 77-79, 89-90. CrossCountry also obtained Caliber's Confidential Information by improper means (*i.e.*, encouraging and/or directing Departed Employees to abscond with Caliber's trade secrets) and proceeded to use it to poach Caliber's customers. *Id.* at ¶ 92-93, 96. This unfair and deceptive conduct that CrossCountry facilitated caused confusion for consumers whose loans were in process with Caliber. *Id.* at ¶ 98. Caliber included allegations regarding at least one customer whose credit CrossCountry pulled without authorization. *Id.* at ¶¶ 80-82. This conduct, expressly admitted in CrossCountry's Motion, is contrary to the public interest. As a result of CrossCountry's wrongful conduct, Caliber has suffered economic damage as well as harm to its reputation and goodwill. *Id.* at ¶¶ 83-86, 96. The public interest is served by preventing institutions such as CrossCountry from engaging in and profiting from such unfair business practices.

CrossCountry tries to defend the unauthorized credit pull (*Id.* at ¶¶ 80-82) and offers a strawman argument that the unfair and deceptive conduct was "committed by the former Caliber employees before they left Caliber—not CrossCountry—in originally leading the borrower to believe that the borrower's information was going to be used to pull credit for a Caliber loan, as opposed to a loan at those employees' next employer." Motion at p. 7. CrossCountry fails to take into account the allegations that CrossCountry encouraged, assisted, and/or directed the Departed Employees to abscond with Caliber's proprietary information to enable the Departed Employees to steal Caliber customers as part of their departure to CrossCountry. *Id.* at ¶¶ 70, 77-78, 87, 104, 107, 109, 128.  Such conduct is

*Plaintiff's Response in Opposition to
Defendant's Motion to Dismiss the Complaint - 9
(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

clearly unfair competition; and as alleged, "has caused and will cause confusion for customers whose loans were in process at Caliber, but who are now being contacted by CrossCountry." *Id.* at ¶ 98.

CrossCountry also fails to fully address the allegation in the Complaint that its unfair and deceptive business practices to raid and pirate other company's employees and customers, respectively, is widespread and goes beyond its conduct to Caliber. Not only is CrossCountry deceiving customers (*i.e.*, the public at-large) but it is unfairly competing with other mortgage companies throughout the country. As such, there is a high "likelihood that additional plaintiffs have been or will be injured in exactly the same fashion." *Evergreen Moneysource Mortg. Co. v. Shannon*, 167 Wn. App. 242, 260-61 (Wash. Ct. App. 2012). The Complaint specifically alleges that "another competitor initiated legal action in this Court alleging that CrossCountry raided their employees, who, acting at CrossCountry's direction, solicited employees and took customer lists and other confidential information." Complaint at ¶ 89. CrossCountry's "calculated, systematic, and unfair business practices were done with the full knowledge, intention, and expectation that the former Caliber employees would—and did—violate their contractual and legal obligations owed to Caliber by soliciting other employees, misappropriating Caliber's confidential information and trade secrets, and pirating loans in process at Caliber." *Id.* at ¶ 2.

Accordingly, Caliber has stated a plausible claim for unfair competition with sufficient particularity to put CrossCountry on notice of the subject of this claim and, therefore, CrossCountry's Motion with regard to Count I should be denied.

**B.   CALIBER'S COMPLAINT STATES A PLAUSIBLE CLAIM FOR MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT OF 2016 (COUNT II)**

Caliber sufficiently pleads its misappropriation of trade secrets claim. Trade secret misappropriation under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq.

*Plaintiff's Response in Opposition to
Defendant's Motion to Dismiss the Complaint - 10
(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

("DTSA") can be committed through (1) the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," (2) "the disclosure of a trade secret without the owner's consent," and (3) "the use of a trade secret without the owner's consent." *Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020) (citing 18 U.S.C. §§ 1839(5)(A)-(B)). A trade secret is defined as information that "the owner thereof has taken reasonable measures to keep . . . secret" and that "derives independent economic value, actual or potential, from not being generally known to . . . another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

As alleged in the Complaint, Caliber's Confidential Information constitutes a trade secret because Caliber takes reasonable measures to keep it secret and it derives independent economic value from not being generally known. Complaint at ¶¶ 52-56. Additionally, CrossCountry certainly has its own employment agreements that contain confidentiality clauses, as it is industry standard to protect non-public information, such that CrossCountry knew or had reason to know that the Caliber Confidential Information (*i.e.*, trade secrets) that the Departed Employees brought to CrossCountry was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret. *Id.* at ¶ 70.

As further alleged in the Complaint, the massive amounts of Confidential Information the Departed Employees sent to their personal email accounts, as they were halfway out of Caliber's doors to join CrossCountry, contains trade secret information, including highly valuable pipeline data (*i.e.*, customer and prospect information). *Id.* at ¶¶ 75-77. Caliber further asserts in its Complaint that the Departed Employees improperly took the trade secrets for use at Cross Country. *Id.* at ¶¶ 77-79, 107-108. Caliber's Complaint also alleges that CrossCountry directed the Departed Employees to acquire Caliber's trade secrets by improper means, consisting of inducing the Departed Employees to breach their duties to Caliber of

maintaining the secrecy of the Confidential Information. *Id.* at ¶¶ 70, 77, 87, 104, 107, 109, 128. CrossCountry's contention however that the Complaint "does not allege that anyone at CrossCountry ever received or even knew about such emails" is without merit and simply confounding. The Complaint specifically alleges that the Departed Employees have used the Confidential Information on behalf of CrossCountry and that the Confidential Information is in CrossCountry's possession and resides on its electronic systems. *Id*. at ¶ 78-79. Caliber even cites to a concrete example of its use (the unauthorized credit pull of a Caliber customer). *Id*. at ¶ 80-82. Caliber has not had the benefit of discovery of CrossCountry's emails, servers, files, and other information to determine the full scope of the misappropriation, but, as alleged, CrossCountry knew of, benefited from, directed, and used the misappropriated trade secrets of Caliber in violation of the DTSA.

In its Motion, CrossCountry relies on the holding in *CleanFish, LLC v. Sims*, 2020 U.S. Dist. LEXIS 46191 (N.D. Cal. 2020) (unpublished), where the Northern District of California granted the defendants' motions to dismiss with leave to amend the plaintiff's claim for misappropriation of trade secrets in violation of the DTSA and California Uniform Trade Secrets Act. CrossCountry's reliance on the non-precedential *CleanFish* is misplaced. The *CleanFish* court found that the complaint had failed to identify the alleged trade secrets with sufficient particularity (not at-issue here). The court also found that the complaint failed to plead that the defendants acquired the information through improper means. The court states that "to adequately plead indirect misappropriation, the plaintiff must allege facts to show that the defendant knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it." *CleanFish, LLC*, 2020 U.S. Dist. LEXIS 46191 at *29 (citations and quotations omitted). Further, the court in *CleanFish* states that "the Plaintiff must allege facts that are not merely

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - 12*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

consistent with both a theory of innocent market entry and the theory that Defendants used Plaintiff's confidential customer list, but rather tend to exclude an innocent explanation." *Id.* at *30 (citations and quotations omitted).

The allegations in Caliber's Complaint are entirely distinguishable from the allegations at-issue in *CleanFish*. Here, Caliber has clearly alleged that Confidential Information at issue is a trade secret. Further, Caliber alleges that CrossCountry knew that Caliber's Confidential Information was a trade secret and that CrossCountry knew that the Departed Employees had acquired it through improper means and/or were breaching a duty of confidentiality by disclosing it. Complaint at ¶¶ 2, 4, 24, 31, 70, 77-79, 87, 93, 96, 102. Last, no innocent explanation exists, as in *CleanFish*, which involved the alleged misappropriation of trade secrets by <u>one</u> former employee and <u>indirect</u> misappropriation by another entity. Here, a massive raid occurred (80 employees within 14 months) and lengthy paper/email trail exists of the Departed Employees absconding with Caliber trade secrets as they resigned to join CrossCountry. Notably, nowhere in CrossCountry's 24 page Motion does it address being in possession of or using Caliber's trade secrets (as alleged). For the instant purposes, the allegations are true. Accordingly, Caliber has stated a plausible claim under the DTSA with sufficient particularity to put CrossCountry on notice of the subject of this claim and, therefore, CrossCountry's Motion with regard to Count II should be denied.

### C. CALIBER'S COMPLAINT STATES A PLAUSIBLE CLAIM FOR CONVERSION OF CONFIDENTIAL AND PROPRIETARY INFORMATION (COUNT III)

Caliber sufficiently pleads its conversion of confidential and proprietary information claim. CrossCountry contends that Caliber's common law conversion claim is "pre-empted by the Uniform Trade Secrets Act, RCW 19.108.900." Such a contention is entirely inapplicable, as Caliber does not bring a claim under the Uniform Trade Secrets Act. Nonetheless, the WUTSA does not preempt Caliber's conversion claim under the adopted elements-based

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - 13*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

approach because Caliber alleges that CrossCountry converted, inter alia, Caliber's market presence, production, revenue, and profit. *See* Complaint at ¶ 85; *see also LaFrance Corp. v. Werttemberger*, 2008 U.S. Dist. LEXIS 98741 (W.D. Wash. 2008) (unpublished) (Court found that claim for conversion of business opportunities such as goodwill and customer base does not rely on trade secret law and was not preempted by WUTSA). A claim for conversion requires three elements: (1) that defendant intentionally interfered with property that belonged to plaintiff; (2) by either taking or unlawfully retaining it; and (3) thereby depriving plaintiff, the rightful owner, of possession. *LaRock v. Kunchick*, 2015 Wash. App. LEXIS 779 (Wash. Ct. App. 2015) (unpublished) (citation omitted). Caliber alleges that CrossCountry wrongfully took Caliber's Confidential Information (through inducement of, encouragement of, or direction to the Departed Employees) and used it to solicit/divert Caliber's customers and/or prospects to CrossCountry. Complaint at ¶¶ 77-79, 90, 116. To the extent that CrossCountry took Caliber documents and information which Caliber exclusively owned and which reflected proprietary data that does not meet the statutory definition of a trade secret, that willful interference with Caliber's right to control such documents, gives rise to an action for conversion.

Caliber is entitled to plead alternative claims for relief. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). To the extent a factfinder determines that any of Caliber's Confidential Information does not meet the statutory definition of a trade secret, such information is subject to common law protection from conversion.

*Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint - 14 (2:22-CV-00616-RAJ)*

RUBIN, FORTUNATO & HARBISON P.C.
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

Accordingly, Caliber has stated a plausible common law conversion claim with sufficient particularity to put CrossCountry on notice of the subject of this claim and, therefore, CrossCountry's Motion with regard to Count III should be denied.

**D.    CALIBER'S COMPLAINT STATES A PLAUSIBLE CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT (COUNT IV)**

Caliber sufficiently pleads its tortious interference with contract claim. To plead a claim for tortious interference with contract, the plaintiff must allege five elements: (1) the existence of a valid contractual relationship; (2) the defendant had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship; (4) that defendant interfered for an improper purpose or used improper means; and (5) resultant damage. *See Ames v. Ames*, 2016 Wash. App. LEXIS 1391, *6 (Wash. Ct. App. 2016) (unpublished) (citation omitted). CrossCountry attacks the third element only, arguing that "Caliber fails to plead any facts regarding the third element—that any action by CrossCountry caused the Departing Employees to breach their Caliber employment agreements."

Contrary to CrossCountry's arguments, Caliber is not simply complaining that CrossCountry hired its employees. Rather, Caliber has alleged that CrossCountry, through and in connection with Everts and the other Departed Employees' efforts, unjustly interfered with Caliber's Agreements. Caliber alleges—and CrossCountry admits in its Motion—that CrossCountry provided the Departed Employees with enhanced compensation. Complaint at ¶ 87; Motion at p. 1. Caliber further alleges that CrossCountry offered the enhanced compensation to induce the Departed Employees to breach their Agreements. Complaint at ¶ 29, 87. Everts himself notes that it will take an offer that "would have to so outweigh the offer to stay that it makes sense to go thru the rig-a-ma-roll…of uprooting my team and going elsewhere." *Id*. at 31. Again, CrossCountry—unconvincingly—tries to divorce itself from the

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

Master Plan and argues that "the Complaint nowhere includes any factual allegation suggesting that CrossCountry ever approved or adopted anything Mr. Everts wrote." Motion at p. 14. Not only does CrossCountry acknowledge that "even if it had been sent," (a tacit admission that it was sent), but also that **everything stated in the Master Plan happened— Everts and his team left Caliber for CrossCountry**. Complaint at ¶¶ 27-36. Clearly, CrossCountry approved and adopted **everything** in the Master Plan.

Further, CrossCountry argues—disingenuously—that it "recruited each employee directly" as its "innocent explanation." Motion at p. 15. But that explanation is inapplicable at this stage. In any event, the Master Plan and the events that followed directly belie that contention and demonstrate that CrossCountry did not recruit each employee directly. Everts explicitly stated in the Master Plan that he was recruiting Caliber employees on behalf of CrossCountry ("I can commit to the following…Set up an office and get it staffed with at least 4 to 8 top producers. . . Here's my connections: Hans – as you know is considering this option strongly; Michelle – she is having more hesitations (according to Hans) – but she is loyal to me and would for sure jump if she knew I was on board…"). Complaint at ¶ 25. Everts then solicited Daniel To on his very first day of employment with CrossCountry, citing the discussion Everts had with Scott Forman (Cross Country Executive Vice President) about the financial inducements CrossCountry would offer Mr. To. *Id.* at 34.

CrossCountry' Motion ignores the following paragraphs of the *Complaint*:

- "CrossCountry's calculated, systematic, and unfair business practices were done with the full knowledge, intention, and expectation that the former Caliber employees would—and did— violate their contractual and legal obligations owed to Caliber by soliciting other employees, misappropriating Caliber's confidential information and trade secrets, and pirating loans in process at Caliber." *Id.* at ¶ 2;

- "CrossCountry conspired with [Everts] and provided him with significant financial inducements to solicit other Caliber

*Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint - 16 (2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

employees to resign from Caliber and defect *en masse* to CrossCountry." *Id.* at ¶ 3;

- "Everts—and the others he was recruiting—also used that time to misappropriate Caliber's confidential information, in particular extensive amounts of borrower information for use at (and by) CrossCountry." *Id.* at ¶ 31;

- "Essentially, upon information and belief, CrossCountry had the producers solicit and recruit their support teams to ensure a smooth transition." *Id.* at ¶ 36;

- "CrossCountry was aware of, or reasonably should have been aware of, the Departed Employees restrictive covenants and other legal obligations owed to Caliber, but still encouraged and induced the Departed Employees to breach their restrictive covenants and other legal obligations owed to Caliber." *Id.* at ¶ 70;

- "Upon information and belief, based on their knowledge of Caliber's employees and its Confidential Information (e.g., compensation information, employee performance information, production, customer pipeline information, etc.) for months, the Departed Employees had been soliciting each other at the direction and encouragement of CrossCountry." *Id.* at ¶ 73; and

- "Upon information and belief, the Departed Employees misappropriated the above described confidential information acting in concert with CrossCountry and with its knowledge and approval, if not with its specific direction." *Id.* at ¶ 77.

Therefore, Caliber has alleged more than sufficient facts in support of its claim that "CrossCountry, without privilege to do so, acted with the intent to harm Caliber by intentionally inducing and encouraging the Departed Employees to breach their contracts with Caliber by (1) soliciting Caliber employees to terminate their employment relationship with Caliber; (2) diverting, converting, and removing loans in process at Caliber to take them to CrossCountry; and (3) retaining, and using, Caliber's Confidential Information." *Id.* at ¶ 128.

CrossCountry contends that Caliber does not "exclude" the "possibilities that…the Departing Employees who allegedly solicited their co-workers did so unilaterally without any

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - 17*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

involvement or inducement by CrossCountry." Motion at p. 15. This contention is false. Caliber specifically asserts that CrossCountry knew that the former Caliber employees—particularly Everts and the other managers/supervisors—had influence over Caliber employees and that such would be an "effective mechanism to solicit successfully other Caliber employees to terminate their employment relationship with Caliber" in violation of their Agreements. Complaint at ¶ 72. Further, the Master Plan, unfortunately for CrossCountry and as alleged in the Complaint, lays out the plan for CrossCountry's raid: actively recruit a manager who has influence over other Caliber employees and provide a significant financial inducement to have them solicit other Caliber employees to join them to CrossCountry; knowingly have the employees take as much Caliber Confidential Information as possible with them to CrossCountry to solicit Caliber customers and build the business so Everts could achieve his incentive bonus. The evidence already obtained <u>before</u> conducting any discovery is alarming to say the least.

Accordingly, Caliber has stated a plausible claim for tortious interference with sufficient particularity to put CrossCountry on notice of the subject of this claim and, therefore, CrossCountry's Motion with regard to Count IV should be denied.

**E.     CALIBER'S COMPLAINT STATES A PLAUSIBLE CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (COUNT V)**

Caliber sufficiently pleads its aiding and abetting breach of fiduciary duty claim. "The general rule is well settled 'that a person who knowingly assists another in the commission of a tort, or who knowingly assists another in violating his fiduciary or trust obligation, is liable for losses proximately caused thereby.'" *Vanguard Int'l v. Guangdong Fully*, No. 57396-9-I, 2008 Wash. App. LEXIS 58, at *12 (Wash. Ct. App. 2008) (unpublished) (quoting *LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 783 (Wash. Ct. App. 1972)). CrossCountry states that, in addition to pleading the existence of a violation by the

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - 18*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

primary wrongdoer and knowledge of this violation by the aider and abettor, the plaintiff must also show "that the aider and abettor substantially assisted in the primary wrong." Motion at p. 17. CrossCountry relies on the "substantially assisted" aspect of the above elements in support of its Motion; yet, CrossCountry does not properly and fully cite the elements necessary to allege a claim for aiding and abetting breach of fiduciary duty claim. Pursuant to *Calvert v. Zions Bancorporation (In re Consol. Meridian Funds)*, 485 B.R. 604 (Bankr. W.D. Wash. 2013), which CrossCountry cites to and relies on in its Motion, "Washington cases have adopted the formulation of aiding and abetting set forth in the Restatement (Second) of Torts § 876(b), which provides that:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

*Calvert*, 485 B.R. at 616 (Bankr. W.D. Wash. 2013).

Here, no one disputes that the Departed Employees owed fiduciary duties and duties of loyalty to Caliber by virtue of their Agreements, employment, and positions of trust with Caliber. Complaint at ¶ 134. Caliber further alleges that CrossCountry knew that the Departed Employees owed such fiduciary duties and duties of loyalty to Caliber—again, this is not in dispute. *Id.* at ¶ 139. Last, Caliber asserts, numerous times throughout the Complaint, that CrossCountry induced, encouraged, acted in concert with, and directed the Departed Employees to breach their duties to Caliber, including their fiduciary duties and duties of loyalty, by way of soliciting other Caliber employees and misappropriating Caliber's Confidential Information. Complaint at ¶¶ 3, 4, 26, 29 ("CrossCountry offered Everts the $1.5

*Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint - 19 (2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

million in bonuses as an inducement for Everts to violate his obligations to Caliber..."), 34, 70, 73, 77, 87, 89, 92, 107, 128, 132, 140, 153, 154. These allegations set forth in Caliber's Complaint more than satisfy the "substantial assistance or encouragement" element of this claim.

Accordingly, Caliber has stated a plausible claim for aiding and abetting breach of fiduciary duty with sufficient particularity to put CrossCountry on notice of the subject of this claim and, therefore, CrossCountry's Motion with regard to Count V should be denied.

**F.     CALIBER'S COMPLAINT STATES A PLAUSIBLE CLAIM FOR TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY (COUNT VI)**

Caliber sufficiently pleads its tortious interference with a business expectancy claim against CrossCountry. To prove tortious interference with a business expectancy under Washington law, the plaintiff must demonstrate: (1) a valid contractual relationship or business expectancy; (2) the defendant's knowledge of that relationship; (3) the defendant's intentional interference inducing or causing a breach of termination of the relationship or expectancy; (4) the defendant's interference being for an improper purpose or using improper means; and (5) damages. *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (Wash. 1997). Caliber had a valid business expectancy with it customers and/or prospects regarding their mortgage loan business. Complaint at ¶¶ 83-88, 145. As stated throughout the Complaint, the Departed Employees, at the direction of and/or for use by CrossCountry, misappropriated Caliber's Confidential Information, including but not limited to its pipeline data. *Id.* at ¶¶ 77-79. For example, on December 12, 2021— just days before he received an official offer from CrossCountry, Everts forward a pipeline spreadsheet entitled "Everts-Pipeline Draft V.4.xlsx" to his personal email account. *Id.* at ¶ 76(a)(i). The spreadsheet contains information for 736 loans/customers including customer name, loan number, product code, loan purpose, loan amount, interest rate, property appraisal value, funded date, property

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - 20*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

address, customer mailing address, email address and phone number, realtor information, and listing agent information. *Id.* As alleged, CrossCountry induced, encouraged, and/or directed Everts to abscond with this highly coveted and sensitive Caliber Confidential Information as he left for CrossCountry to enable CrossCountry to pirate these Caliber customers. *Id.* at ¶¶ 2-4, 77.

The Departed Employees (combined) were responsible for generating more than $2.3 billion in annual loan origination for Caliber and millions of dollars in profit for Caliber. *Id.* at ¶ 83. CrossCountry is a sophisticated party and, according to the CrossCountry website, is a "nationwide full-service lender…with more than 8,000 employees and more than 600 branches" making it "one of the nation's largest and fastest growing retail mortgage lenders" in the country. As such, CrossCountry knew that the Caliber Confidential Information it was acquiring from the Departed Employees, including pipeline data, contained information related to Caliber's business relationships with its customers and prospects. Simply put (and as alleged in the Complaint), CrossCountry induced, encouraged, acted in concert with, directed, used, and benefited from the Departed Employees stealing Caliber's Confirmation Information, which gave CrossCountry access to Caliber's customers and prospects lists and other information and made it possible for CrossCountry to pursue Caliber's customers and/or prospects. CrossCountry's conduct was intentional and done by the improper means of misappropriation of confidential and proprietary information of Caliber. By taking and using Caliber's Confidential Information, including its pipeline data, CrossCountry has knowingly and intentionally interfered with Caliber's business relationships with its customers and/or prospects to Caliber's significant detriment. *Id.* at ¶¶ 78, 145, 149.

Accordingly, Caliber has stated a plausible tortious interference with a business expectancy claim with sufficient particularity to put CrossCountry on notice of the subject of this claim and, therefore, CrossCountry's Motion with regard to Count VI should be denied

*Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint - 21 (2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

**G.**     **CALIBER'S COMPLAINT STATES A PLAUSIBLE CLAIM FOR CIVIL CONSPIRACY (COUNT VII)**

Caliber sufficiently pleads a claim for civil conspiracy. CrossCountry contends that Caliber's claim for civil conspiracy is insufficient because the Complaint fails to (1) "plead a single underlying actionable claim against CrossCountry," and (2) "its conspiracy allegations are entirely conclusory." Motion at pp. 19-20. Contrary to CrossCountry's argument, the Complaint is rife with allegations of improper intentions and methods by CrossCountry—Caliber asserts six underlying actionable claims against CrossCountry (unfair competition, violation of the DTSA, conversion of confidential and proprietary information, tortious interference with contract, tortious inducement to breach fiduciary duty of loyalty, and tortious interference with advantageous business relationships). As demonstrated herein, those claims are clearly actionable.

Moreover, Caliber's conspiracy allegations are not conclusory. CrossCountry describes the Master Plan as nothing more than "paying someone who accepts an offer of employment" and "a simple bonus for achieving a particular level of loan volume." Calling these financial inducements "simple" and "innocent" (a $1 million sign-on bonus and $500,000 volume bonus) is preposterous under the circumstances. Everts clearly required a "pay for play," as laid out in the Master Plan, and CrossCountry plainly agreed. The Master Plan, as alleged in the Complaint, lays out an illegal scheme between CrossCountry and Everts to solicit Caliber employees (in violation of his and the Departed Employees' Agreements as well as applicable law) to leave Caliber for CrossCountry and, in doing so, take with them Caliber's Confidential Information for CrossCountry's use and benefit so as to help CrossCountry divert/remove Caliber customers and loans. For instance, on his first day at CrossCountry, on behalf of CrossCountry, Everts wrongfully solicited a high-level Caliber employee to leave Caliber for CrossCountry. Complaint at ¶ 34.

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - 22*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

In support of Caliber's position and as asserted in the Complaint, consistent with the Master Plan and beyond, from January 7, 2022 to April 18, 2022, 30 Caliber employees (not including over 40 support staff that were also recruited and solicited by the producers with whom they worked) resigned and joined CrossCountry. *Id.* at ¶¶ 32-36. It is wholly without merit and inapposite to the assertions set forth in Caliber's Complaint for CrossCountry to pretend that there are no actionable underlying claims against CrossCountry **alleged** in the Complaint. For all the reasons stated above and asserted in the Complaint, Caliber has alleged numerous underlying actionable torts and the facts and circumstances relied upon are consistent with an illegal conspiracy scheme between CrossCountry and the Departed Employees to raid Caliber of its employees and its Confidential Information for the use and benefit of CrossCountry. *Id.* at ¶¶ 152-155.

Accordingly, Caliber has stated a plausible civil conspiracy claim with sufficient particularity to put CrossCountry on notice of the subject of this claim and, therefore, CrossCountry's Motion with regard to Count VII should be denied.

## V.   CONCLUSION

Under the applicable law, Caliber has properly pleaded all elements of its claims against CrossCountry for unfair competition, misappropriation of trade secrets under the DTSA, conversion of confidential and proprietary information, tortious interference with contract, aiding and abetting breach of fiduciary duty, tortious interference with a business expectancy, and civil conspiracy. Accordingly, Caliber respectfully requests that the Court deny Defendant's Motion and allow this case to proceed to discovery and a decision on the merits. To the extent the Court finds otherwise, Caliber respectfully requests leave to amend the *Complaint*.

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - 23*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

1    Dated: August 1, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

RUBIN, FORTUNATO & HARBISON P.C.

By:     /s/ Andrew M. DeLucia
Andrew M. DeLucia (*Pro Hac Vice*)
RUBIN, FORTUNATO
HARBISON P.C.
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
610.408.2025
adelucia@rubinfortunato.com

Eric D. Lansverk, WSBA #17218
HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
206.623.1745
eric.lansverk@hcmp.com

*Counsel for Plaintiff*

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - 24*
*(2:22-CV-00616-RAJ)*

**RUBIN, FORTUNATO & HARBISON P.C.**
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of August, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

s/ Andrew M. DeLucia
Andrew M. DeLucia (admitted *pro hac vice*)
RUBIN, FORTUNATO & HARBISON P.C.
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
610.408.2025
adelucia@rubinfortunato.com

*Plaintiff's Response in Opposition to*
*Defendant's Motion to Dismiss the Complaint - 25*
*(2:22-CV-00616-RAJ)*

RUBIN, FORTUNATO & HARBISON P.C.
1200 Liberty Ridge Drive, Suite 220
Wayne, Pennsylvania 19087
Telephone: (610) 408-2025
Facsimile: (610) 854-4348