The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CALIBER HOME LOANS, INC., | |
| Plaintiff, | CASE NO. 2:22-cv-00616-RAJ |
| v. | |
| CROSSCOUNTRY MORTGAGE, LLC, | **ORDER** |
| Defendant. | |

This matter comes before the Court on Defendant CrossCountry's motion to dismiss Plaintiff's complaint. Dkt. # 12. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.

ORDER - 1

# I. BACKGROUND

Plaintiff Caliber Home Loans, Inc. ("Plaintiff" or "Caliber") is a Texas-based mortgage brokerage firm. Dkt. # 1 (Complaint) ¶ 5. Plaintiff employs loan originators around the country to sell residential mortgage services to borrowers. *Id.* ¶ 6. Defendant CrossCountry, LLC ("Defendant" or "CrossCountry") is an Ohio-based retail mortgage lender and a competitor of Plaintiff. *Id.* ¶¶ 7-8.

Plaintiff alleges that, in an unusually short period of time, Defendant hired over 80 employees from Plaintiff who worked in various offices in cities in Washington, Oregon, Texas, Florida, Tennessee, and California. *Id.* ¶ 13. These individuals had been employed as Branch Managers, Sales Managers, Loan Consultants, and Support Staff for Caliber. *Id.* Plaintiff also alleges that several more employees plan to depart Caliber to join Cross Country. *Id.* ¶ 14.

Specifically, Plaintiff alleges that CrossCountry put into action a "Master Plan" to raid Plaintiff's employees and confidential information. Defendant is alleged to have started off their plan by hiring Texas-based Sales Managers Jeannie Martin-Smith and Kathleen Hays early 2021. *Id.* ¶ 20. From there, Defendant hired eight more Caliber employees before the close of 2021, seven of whom were based in Washington. *Id.* ¶¶ 21-22.

Plaintiffs allege that the "Master Plan" was explained in a December 3, 2021 email sent from Mark Everts's[1] personal email address (evertsmark@gmail.com) to his work email address (mark.everts@caliberhomeloans.com). In the email, Everts wrote of potentially moving from Caliber to CrossCountry, staffing his new office with "at least 4 to 8 top producers," and grooming other high-producing employees for future management roles. *Id.* ¶ 25, Ex. A (Everts Email). He specifically identified Caliber

---

[1] At the time, Mark Everts was a Seattle Branch/Sales Manager.

ORDER - 2

employees Hans Illingworth and Michelle Muqtadir as "connections." *Id.* As to Muqtadir, Everts explained that she was reluctant to leave her job, but noted that she was "loyal to [Everts] and would for sure jump if she knew [Everts] was on board." *Id.* Everts appeared to be directing his thoughts toward someone named Scott, writing that he was "[t]alking turkey with you here Scott." *Id.* Everts then asked Scott to keep the information that followed confidential. *Id.* Everts noted that he had sufficient funds saved for retirement, but was "excited" about this new opportunity. *Id.* Essentially, Everts indicated that an offer to join CrossCountry would have to be lucrative enough to be worth the "rig-a-ma-roll" of leaving Caliber and "uprooting [his] team and going elsewhere." *Id.* He ended the email saying, "I hope that will give you enough and I see by my clock that it is just 5 min. before 5 your time :)" *Id.*

Plaintiff alleges that this email was sent from Everts to CrossCountry's Executive Vice President Scott Foreman. *Id.* ¶ 24. Plaintiff characterizes the Everts email as the "Master Plan" that set into motion CrossCountry's raid of nearly 80 Caliber employees. *Id.* ¶ 25 Defendant, on the other hand, characterizes this email as Everts "record[ing] his thoughts about leaving Caliber to join Cross Country," and objects to Plaintiff's allegation that this email was sent from Everts to Foreman, despite sentences being addressed to "Scott" and despite Everts acknowledging that the email was sent 5 minutes before what would have been 5:00 p.m. in Foreman's office in New Jersey. Dkt. # 12 at 3.

Just 13 days later on December 16, 2021, CrossCountry extended to Everts a confidential offer of employment as a Branch Manager with a $1,000,000 sign-on bonus and a potential $500,000 loan volume bonus. *Id.* ¶ 27, Ex. B (CrossCountry Offer Letter). Plaintiff alleges that Everts signed the offer letter on December 19, 2021, although he continued working at Caliber for three more weeks. *Id.* ¶¶ 28, 30. Plaintiff alleges that,

ORDER - 3

during this time period, Everts misappropriated Plaintiff's confidential info in the form of extensive amounts of borrower information, to then be used at CrossCountry. *Id.* ¶ 31. On January 11, 2022, one day after he resigned from Caliber, Everts emailed Caliber Loan Officer Danny To with an offer to leave Caliber and join CrossCountry, and referenced a $400,000 sign on bonus. *Id.* ¶ 34.

On January 7, 2022 Hans Illingworth (previously identified by Everts as someone who would consider jumping to CrossCountry) left his employment with Plaintiff to join CrossCountry as a Regional Manager. *Id.* ¶ 32. On January 10, 2022, Everts and several other employees (including Michelle Muqtadir) left Caliber and officially joined CrossCountry. *Id.* ¶ 33. More Caliber resignations followed. In February 2022, ten individuals left Caliber to join CrossCountry, and in March-April 2022, fifteen more employees did the same. *Id.* ¶ 35. Additionally, 40 support staff employees resigned from Caliber. *Id.* ¶ 36. The parties refer to the various employees that left Caliber for CrossCountry during the time period at issue as the "Departing Employees." *See generally* Dkt. # 1; *see also* Dkt. # 12 at 13.

The complaint alleges that many of the above-mentioned Departed Employees sent to their personal email addresses confidential documents detailing customer interest rates, FICO scores, income, home appraisal values, and other information at around the same time that they left Caliber for CrossCountry. *See* Dkt. # 1 ¶ 76. The complaint describes in detail how Mark Everts, Mason Buckles, Casey Granston, Hans Illingworth, Lori Johanson, Timothy Lauch, Ryan Mallory, Michelle Muqtadir, and Melissa Medved sent messages from their Caliber email accounts to their personal email accounts that included documents containing customer and loan information. *Id.* ¶ 76(a)-(i). For example, on December 21, 2021, Lauch sent several spreadsheets of lists of agents, "prospects," "leads," "preapprovals," and a client list that included customer contact

ORDER - 4

information and loan information for 400 individuals to his personal email account. *Id.* ¶ 76(f)(i). A few days later, on December 23, he emailed to himself a zip file with 72 spreadsheets. Each included detailed loan information for various customers, such as the loan amount, down payment, sales price, monthly payment, and property taxes. *Id.* ¶ 76(f)(ii). Five days later, Lauch sent to himself a "pipeline" spreadsheet with information concerning 150 customers. *Id.* ¶ 76(f)(iii). And just over a week later, on January 6, 2022 (four days before he resigned from Caliber), Lauch sent himself a zip file with numerous spreadsheets with detailed loan and mortgage information for 75 customers. *Id.* ¶ 76(f)(iv).

Plaintiff states that Caliber generally requires sales employees to execute restrictive covenant agreements in favor of Caliber that prohibit employees from: (1) soliciting Caliber employees to end their employment; (2) removing loans in process at Caliber; and (3) retaining, using, or disclosing Caliber's confidential business information. *Id.* ¶ 38. Plaintiff alleges that on January 11, 2022, Plaintiff sent a demand letter to Everts regarding his "restrictive covenants and Caliber's concerns about his misconduct." *Id.* ¶ 61. On January 18, Defendant responded to the letter, denying any wrongdoing or that Evert diverted loans or recruited Caliber employees to join CrossCountry. *Id.* ¶¶ 62-63.

In January 2022, Plaintiff sued Everts in King County Superior Court, and the action resulted in a Stipulated Injunction. *Id.* ¶ 65. As employees continued to leave Caliber in 2022, Plaintiff sent cease and desist letters demanding the return of confidential information to several former employees, copying Defendant on each. *Id.* ¶¶ 66-67. Plaintiff alleges that none of the former employees responded and that Defendant responded in March 2022 by stating that CrossCountry did not have enough information to "adequately investigate." *Id.* ¶¶ 68-69.

ORDER - 5

Plaintiff filed a complaint in this Court on May 6, 2022, alleging unfair competition, misappropriation of trade secrets, conversion of confidential and proprietary information, tortious interference with contract, tortious inducement to breach fiduciary duty of loyalty, tortious interference with advantageous business relationships, and civil conspiracy. *See* Dkt. # 1 ¶ 91-156. Plaintiff seeks compensatory damages in excess of $5,000,000, attorney's fees and costs, statutory damages under the Defend Trade Secrets Act, pre-judgment interest, and any other relief that the Court deems appropriate. *Id.* at 45. Defendant moved to dismiss the complaint in its entirety for failure to state a claim under Rule 12(b)(6). *See* Dkt. # 12. Plaintiff filed a response in opposition to Defendant's motion, Dkt. # 13, and Plaintiff filed a reply in support of dismissal. Dkt. # 14.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Twombly*, 550 U.S. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, a court typically considers only the contents of the complaint. However, a court is permitted to take judicial notice of facts that are incorporated by reference in the complaint. *United States v. Ritchie*, 342 F.3d 903, 908

ORDER - 6

(9th Cir. 2003) ("A court may . . . consider certain materials documents attached to the complaint, documents incorporated by reference in the complaint"); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) ("[I]t is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss'"). With these principles in mind, the Court turns to the instant motion.

### III.   DISCUSSION

**a.) Unfair Competition**

Both parties agree that Plaintiff brings its first cause of action under Washington's Unfair Business Practices Act, RCW 19.86.020. Dkt. # 12 at 6; Dkt. # 13 at 8. To establish a claim under the Unfair Business Practices Act, the plaintiff must allege: (1) an unfair or deceptive act or practice; (2) that occurred in trade or commerce; (3) impacting the public interest; (4) injury to the plaintiff's business or property; and (5) causation. *Panang v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009) (citing *Hangman Ridge Trainings Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986)). "The first two elements may be established by a showing that (1) an act or practice which has a capacity to deceive a substantial portion of the public (2) has occurred in the conduct of any trade or commerce." *Evergreen Moneysource Mortgage Co. v. Shannon*, 274 P.3d 375, 384 (Wash. 2012) (citing *Hangman Ridge*, 719 P.2d at 785-86).

Defendant argues that the complaint fails to allege any specific deception or deceptive actions undertaken by CrossCountry, and that the only deceptive act that the complaint alleges—an unauthorized credit pull by a Departed Employee—is inadequate, because there is no way that a single unauthorized credit pull can deceive a substantial portion of the public. Dkt. # 12 at 7. Plaintiff counters that there is a "high likelihood that additional plaintiffs have been or will be injured in exactly the same fashion," bringing

ORDER - 7

this case within the realm of public interest. Dkt. # 13 at 10 (citing *Evergreen*, 247 P.3d at 385).

However, "conduct that is not directed at the public, but, rather, at a competitor, lacks the capacity to impact the public in general." *Evergreen*, 247 P.3d at 385. Plaintiff alleges that Defendant took specific actions against Caliber in what Plaintiff describes as a meticulously planned raid of Caliber's employees and business interests pursuant to a "Master Plan." Dkt. # 1 ¶ 2; Dkt. # 13 at 4. Plaintiff alleges injury to its business, Dkt. # 1 ¶¶ 83-84, and causation, *id.* at ¶ 20-37. But Plaintiff's attempt to connect this alleged conduct by CrossCountry—directed at a *competitor*—to potential public interest impact falls short, and consequently, Plaintiff fails establish the first and third elements of the claim. Plaintiff's Count I is **DISMISSED** with leave to amend.

### b.) Misappropriation of Trade Secrets

Plaintiff's second claim is brought under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq. It creates a private right of action for the misappropriation of a trade secret. *Attia v. Google*, 983 F.3d 420, 424 (9th Cir. 2020). The Act defines a "trade secret" as "financial," "business," and "economic" information that "the owner thereof has taken reasonable measures to keep … secret," and that provides "independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the … use of the information." 18 U.S.C. § 1839(3). "[T]he definition of what may considered a 'trade secret' is broad." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (citation omitted). "Misappropriation" is defined as "(1) the 'acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;' (2) the disclosure of a trade

secret without the owner's consent; and (3) the use of a trade secret without the owner's consent." *Attia*, 983 F.3d at 424 (citing 18 U.S.C. § 1839(5)(A), (5)(B)).

Plaintiff alleges that several Departed Employees who left Caliber to join CrossCountry sent emails from their Caliber email accounts to their personal accounts containing customer information, loan and mortgage information, scripts, and other documents. Dkt. # 1 ¶ 76(a)-(i). Plaintiff alleges that Caliber takes reasonable measures to keep such data secret, such as having employees sign employment agreements that contain confidentiality clauses. *Id.* ¶¶ 52-56, 70. Further, Plaintiff alleges that the Departed Employees took the sensitive information for use at CrossCountry, and CrossCountry directed the employees to obtain this information by improper means. *Id.* ¶¶ 77-78, 107-108. Plaintiff believes that this information is now contained in Defendant's electronic systems. *Id.* ¶ 79.

Defendant argues that the complaint fails to allege any facts raising a plausible inference that CrossCountry misappropriated Caliber's trade secrets and presents no facts supporting the allegation that employees misappropriated confidential information "with [CrossCountry's] knowledge and approval, if not with its specific direction." Dkt. # 12 (quoting Dkt. # 1 ¶ 77). Defendant cites *CleanFish, LLC v. Sims* for the contention that the mere allegation that a departing employee took confidential information and then began working for a competitor is insufficient to state a claim at the motion to dismiss stage. Case No. 19-cv-3663-HSG, 2020 WL 1274991, at *10 (N.D. Cal. Mar. 17, 2020). However, the case is factually distinguishable. The court found Plaintiff's allegation that customer lists constituted a trade secret to be too "high level" to give the court or defendants notice of the boundaries of the alleged trade secret. 2020 WL 1274991, at *10. Additionally, *CleanFish* dealt with the alleged misappropriation of information obtained by *one* employee. *Id.* Here, Plaintiff provides details of numerous emails sent

ORDER - 9

by Departed Employees around the time of their resignation that included sensitive and confidential loan and mortgage information. *Id.* ¶ 76. Plaintiff alleges that many of the Departed Employees were subject to confidentiality agreements and policies to protect customers' sensitive data. *Id.* ¶ 56. And Plaintiff alleges that CrossCountry now has possession of this information that Caliber attempted to keep confidential. Crucially, Plaintiff alleges that CrossCountry obtained it from the Departed Employees. *Id.* ¶¶ 78-79.

As the *CleanFish* court noted, "to adequately plead indirect misappropriation, 'the plaintiff must allege facts to show that the defendant … had reason to know that the disclosing party had acquired [the information] through improper means or was breaching a duty of confidentiality by disclosing it." 2020 WL 1274991, at * 10. In *CleanFish*, Plaintiff only alleged that the employee and defendant "continuously communicated" with each other. Here, Plaintiff alleges concrete examples of Departed Employees leaving Caliber with valuable information via email— and immediately joining CrossCountry.

Further, the facts alleged by Plaintiff tend to exclude the "innocent explanation" of simple competition advanced by Defendant and discussed in *CleanFish*. Taking Plaintiff's allegations as true and drawing all reasonable inferences in the Plaintiff's favor, as the Court must at this stage, the Court finds that Plaintiff adequately states a claim for misappropriation under the Defend Trade Secrets Act. Defendant's request to dismiss Count II is **DENIED.**

### c.) Conversion of Confidential and Proprietary Information

Defendant requests that this Court dismiss Plaintiff's conversion claim as pre-empted by Washington's Uniform Trade Secrets Act (UTSA), RCW 19.108.900. The

ORDER - 10

UTSA states that it "displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret." RCW 19.108.900. It does not preempt contractual or civil liability relief not based upon misappropriation. *Id.* In support of their preemption argument, Defendant cites *LaFrance Corp. v. Werttemberger*, Case No. C07-1932Z, 2008 WL 5068653 (W.D. Wash. Nov. 24, 2008) and *Illinois Tool Works, Inc. v. Seattle Safety, LLC*, Case No. C07-2061JLR, 2009 WL 10675668 (W.D. Wash. Jan 28, 2009), both cases where plaintiff brought both a UTSA claim and a conversion claim, and where the court found preemption to be applicable. Plaintiff argues that it adequately pled that Defendant wrongfully took Caliber's confidential information via the Departing Employees and used it to divert Caliber's customers and prospects to CrossCountry. Dkt. # 1 ¶¶ 77-79, 90, 116.

  The elements for a claim of conversion are: (1) a defendant intentionally interfered with property that belonged to plaintiff, (2) by either taking or unlawfully retaining it, (3) thereby depriving the rightful owner of possession. *United Federation of Churches, LLC v. Johnson*, 598 F. Supp. 3d 1084, 1100 (W.D. Wash. 2022). In Washington, the Court uses a three-step analysis to determine whether a conversion claim is preempted by the UTSA. The Court must: "(1) assess the facts that support the plaintiff's [non-UTSA] civil claim, (2) ask whether those facts are the same as those that support the plaintiff's UTSA claim, and (3) hold that the UTSA preempts liability on the civil claim unless the common law claim is factually independent from the UTSA claim." *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1198 (W.D. Wash. 2015) (citing *Thola v. Henschell*, 164 P.3d 524, 530 (2007)). The framework set forth by the Washington Supreme Court mandates that a conversion claim is preempted by UTSA *if plaintiff actually asserts a UTSA claim*. Plaintiff does not do so here. Notably, Defendant cites no caselaw supporting preemption of a plaintiff's conversion claim by UTSA where

ORDER - 11

the plaintiff did not also bring an UTSA claim. Defendant's request to dismiss Count III on the basis of preemption is **DENIED.**

### d.) Tortious Interference with Contract

To state a tortious interference claim, plaintiff must allege: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *United Federation of Churches*, 598 F. Supp. 3d at 1098. Defendant argues that Plaintiff has failed to plead any facts regarding the third element that show that CrossCountry caused Departing Employees to breach their employment agreements with Caliber. Dkt. # 12 at 13. Defendant contends that Plaintiff's allegation that CrossCountry intentionally induced and encouraged Departing Employees to breach their contracts with Caliber by (1) soliciting Caliber employees to terminate their employment, (2) diverting, converting, and removing loans in process at Caliber to take them to CrossCountry, and (3) retaining and using Caliber's information is insufficient to state a claim of tortious interference. *Id.*

The Court disagrees. The various emails containing loan, mortgage, and customer information sent by Departing Employees around the time of their departures raise an inference that Departing Employees took certain information with them in order to build up their business while at CrossCountry, i.e. sell residential mortgages to retail customers. Dkt. # 1 ¶ 76. It is possible that the Departing Employees' actions violated their employment agreements.[2] However, even if the Employees' actions did not violate

---

[2] Nonetheless, "[a]n enforceable contract is not required to support a tortious interference action." *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1188 (W.D. Wash. 2019) (citation omitted).

ORDER - 12

their employment contracts, the complaint adequately alleges that the Employees improperly retained confidential information that was then passed on to CrossCountry. Indeed, the complaint contains a litany of detailed allegations that specific Departed Employees sent to themselves confidential customer and loan information within weeks and even days of leaving Caliber. This suggests that these actions were done intentionally. The fact that each Departed Employee then joined CrossCountry is further evidence of the same. *See* Dkt. # 1 ¶ 13(a)-(r). Whether the Departing Employees acted under Defendant's specific direction is yet to be proven. But at this stage, the Court must accept Plaintiff's allegations—that CrossCountry now possesses purloined information that could only be obtained from Caliber employees in violation of their employment contracts—as true. Dkt. # 1 ¶ 79. *See TMP Worldwide Advert. & Commc'n, LLC v. LATCareers, LLC*, Case No. C08-5019RBL, 2008 WL 4603404, * 3 (noting that standard for viable pleading under Fed. R. Civ. P. 12(b)(6) is less stringent than that applicable to summary judgment and denying request to dismiss tortious interference with contract claim where complaint, construed liberally, met each element). Defendant's request to dismiss Count IV is **DENIED**.

**e.) Tortious Inducement to Breach Fiduciary Duty of Loyalty**

The parties characterize count five as a claim for aiding and abetting breach of fiduciary duty. *See* Dkt. # 12 at 16-17 n. 2; Dkt. # 13 at 18. The complaint alleges that Defendant induced numerous management-level Departed Employees to breach their fiduciary duties of loyalty to Caliber. Dkt. # 1, ¶¶ 132-33. It further alleges that inducement on the part of Defendant occurred when CrossCountry solicited Caliber's employees, removed and diverted loans that were in process at Caliber, misappropriated

ORDER - 13

Caliber's confidential information, and concealed these activities from Caliber. *Id.*, ¶ 140.

Under Washington law, a claim for breach of fiduciary duty requires plaintiff to prove: (1) the existence of a duty owed, (2) a breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury. *In re Consolidated Meridian Funds*, 485 B.R. 604, 618 (Bankr. W.D. Wash. 2013). To plead a claim for aiding and abetting, plaintiff must allege (1) the existence of a violation by the primary wrongdoer; (2) knowledge of this violation by the aider and abettor; and (3) that the aider and abettor substantially assisted in the primary wrong. *Id.* at 616. Defendant does not dispute that Departed Employees owed fiduciary duties to Caliber, but argues that the complaint fails to adequately plead the substantial assistance element and adequately allege that CrossCountry assisted any Departing Employees in any breach of their fiduciary duty. Dkt. # 12 at 17.

Plaintiff argues that the complaint's allegations of CrossCountry's $1.5 million offer to Everts, Everts's solicitation email to Loan Officer Danny To, and subsequent solicitations from Departed Employees using confidential information obtained as Employees left their jobs with Caliber are sufficient to state a claim for aiding and abetting. In particular, Plaintiff alleges that CrossCountry was aware and supportive of Departed Employees using confidential information in order to encourage more Caliber employees to jump ship. Dkt. # 1 ¶ 77. Indeed, Plaintiff alleges that confidential information is now on CrossCountry's electronic systems, *Id.* ¶ 107, presumably for use by CrossCountry. The unusual circumstance of numerous Departing Employees sending information from their Caliber email accounts to their personal email accounts just as they transitioned to CrossCountry raise Plaintiff's allegations beyond mere speculation and into the realm of possible "agreement and concerted action" between the Departed Employees and Defendant. *Brashkis v. Hyperion Capital Group, LLC*, Case No. 3:11-cv-

ORDER - 14

05635 RBL, 2011 WL 6130787, *3 (W.D. Wash. Dec. 8, 2011); *see also A.H. Lundberg Assoc, Inc. v. TSI, Inc.*, Case No. C14-1160JLR, 2016 WL 9226998, *5 (W.D. Wash. Feb. 18, 2016) (declining to dismiss aiding and abetting breach of fiduciary claim when plaintiff alleged that defendant used a third party's confidential knowledge of customers and pending proposals to obtain contracts that they would not have obtained without the confidential knowledge). Defendant's request to dismiss Count V is **DENIED**.

### f.) Tortious Interference with Advantageous Business Relationships

A tortious interference with business expectancy claim must allege: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendant had knowledge of the relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *United Federation of Churches*, 598 F. Supp. 3d at 1098 (citing *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (1997)). Defendant argues that Plaintiff fails to adequately plead any of the required elements. Dkt. # 12 at 17.

The Court agrees with Defendant as to the second, third, and fourth elements. Plaintiff's allegation that it had a business expectancy with "its customers and/or prospects," Dkt. # 1 ¶ 145, and specifically, with 736 Caliber loans/customers whose names Everts forwarded from his work account to his personal email account on December 12, 2021, *Id.* ¶ 76(a)(i), is sufficient to put Defendant on notice as to Plaintiff's business expectancy with those individuals. *See Straw v. Avvo, Inc.*, Case No. C20-0294JLR, 2020 WL 5066939, *5 (W.D. Wash. Aug. 27, 2020) (Plaintiff must "'tie… losses to specific relationships' between the plaintiff and 'identifiable third parties.'") (quoting *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, 280 (Wash.

ORDER - 15

2006)).

However, as to the second element, Plaintiff fails to adequately allege that CrossCountry had specific knowledge of Plaintiff's relationships with "customers and/or prospects" or the 736 customers listed in the spreadsheet sent to Everts's personal email account. Further, concerning the third and fourth elements, Plaintiff fails to allege that CrossCountry interfered with Caliber's relationships with "customers and/or prospects," such that any customer or prospect (including any customer listed in the Everts spreadsheet) actually terminated their relationship with Caliber. *See Lundberg*, 2016 WL 9226998, at * 5 (allegations that third party raided client lists *and* that plaintiff actually lost contracts or expectancies as a result were sufficient to support tortious interference claim). Finally, while Plaintiff claims Caliber expected to receive millions in profit from loan originations by the Departed Employees, Dkt. # 1 ¶ 83, this does not salvage their claim. Plaintiff's tortious interference with business expectancy is **DISMISSED** with leave to amend.

**g.) Civil Conspiracy**

Plaintiff's seventh count, for civil conspiracy, alleges that CrossCountry conspired with the Departed Employees to violate the Employees' various legal obligations to Caliber, such as restrictive covenants concerning solicitation of employees, misappropriation of confidential information, and removal of loans in process with Caliber. Dkt. # 1 ¶ 152. A Washington civil conspiracy claim requires that a plaintiff allege that (1) two or more people contributed to accomplish an unlawful purpose or combined to accomplish a lawful purpose by unlawful means, and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy. *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020). "Because the conspiracy must be combined with an unlawful purpose, civil conspiracy does not exist

ORDER - 16

independently—its viability hinges on the existence of a cognizable and separate underlying claim." *Id.*

Defendant argues that, because Plaintiff has failed to plead an underlying actionable claim against CrossCountry, Plaintiff's civil conspiracy claim must also fail. Dkt. # 12 at 20. Further, Plaintiff argues that the facts and circumstances relied upon by Plaintiff are just as consistent with lawful or honest purposes as they are with an unlawful purpose. *Id.* (citing *Puget Sound Sec. Patrol, Inc. v. Bates*, 389 P.3d 709, 714 (Wash. 2017)).

The Court has found that the complaint pleads underlying actionable claims. *See* discussion *supra* Section III.b-e. Plaintiff alleges that the "Master Plan" (the Everts email) set out CrossCountry's plan to poach Caliber's employees and specifically bring over Everts's team. Dkt. # 1 ¶ 24. Plaintiff further alleges that Evert, on his first day at CrossCountry, solicited Caliber employee Danny To leave his employment—in violation of a non-solicitation clause of his employment agreement with Caliber. *Id.* ¶¶ 34, 40, 41. And the complaint alleges that in 2021 and 2022, numerous Caliber employees joined CrossCountry, taking with them customer and loan information that would be valuable to CrossCountry on their way out the door. *Id.* ¶ 76(a)-(i). Investigation and discovery will reveal the extent to which CrossCountry was aware of the Departed Employees' actions. But at this stage, Plaintiff sufficiently alleges that Defendant conspired with the Departed Employees to violate their legal obligations to Caliber. Defendant's request to dismiss Count VII is **DENIED**.

ORDER - 17

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Defendant's motion to dismiss. **Within fourteen (14) days from the date of this Order**, Plaintiff may file an amended complaint addressing the deficiencies described above. If Plaintiff does not file an amended complaint within that time, the Court may dismiss this action with prejudice.

DATED this 30th day of March, 2023.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER - 18