1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

CALIBER HOME LOANS, INC.,

11

Plaintiff,

12

v.

13

CROSSCOUNTRY MORTGAGE, LLC,

14

Defendant.

15

No. 2:22-cv-00616-RAJ

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

16

Caliber Home Loans, Inc. ("Caliber"), by its undersigned attorneys, brings this

17

Amended Complaint[1] against Defendant, CrossCountry Mortgage, LLC ("CrossCountry").

18

## NATURE OF THIS ACTION

19

1.      Caliber is a mortgage services provider. CrossCountry—Caliber's direct

20

competitor—executed an illegal scheme by targeting and raiding Caliber employees,

21

misappropriating Caliber's trade secrets, and diverting mortgage loan customers from Caliber

22

to CrossCountry. Specifically, in a short amount of time, at last count, CrossCountry has hired

23

more than 40 producers (plus just as many support and administrative staff, for a total of

24

80 plus employees), from six different states (Washington, Oregon, Texas, Florida,

25
26

---

27

[1] Caliber files this Amended Complaint in accordance with the Court's March 30, 2023 Order and removes Count I (Unfair Competition) and Count VI (Tortious Interference with Advantageous Business Relationships) of Caliber's original Complaint. These are the two Counts that the Court Dismissed with Leave to Amend. Caliber will not pursue those two Counts, moving forward on the remaining five Counts.

28

*AMENDED COMPLAINT - 1*
*(2:22-cv-00616-RAJ)*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Tennessee, and California), and across 18 different branch offices. The departed employees were responsible for more than $2.3 billion in annual mortgage loan origination for Caliber, which generated millions of dollars in profit annually. CrossCountry wanted to convert those offices, production, revenue, and profits to its own.

2.      CrossCountry's calculated and systematic business practices were done with the full knowledge, intention, and expectation that the former Caliber employees would—and did—violate their contractual and legal obligations owed to Caliber by soliciting other employees, misappropriating Caliber's confidential information and trade secrets, and pirating loans in process at Caliber. CrossCountry's actions were malicious and done with the intention of causing significant harm to Caliber's retail mortgage business.

3.      For example, to effectuate the raid in the Seattle area, CrossCountry conspired with former Branch Manager Mark Everts ("Everts") and provided him with significant financial inducements to solicit other Caliber employees to resign from Caliber and defect *en masse* to CrossCountry.

4.      In doing so—including during Everts' employment with Caliber—Everts and others, in concert with CrossCountry and for its benefit, misappropriated an extensive amount of Caliber's trade secrets and customer information and orchestrated this mass departure of Caliber's Washington State employees.

## PARTIES

5.      Caliber is a mortgage brokerage firm and a limited liability corporation, incorporated under the laws of the State of Delaware with its principal place of business located in Dallas, Texas.

6.      Caliber employs loan originators across the country to, among other things, sell its residential mortgage services to retail customers (*i.e.,* borrowers). Caliber has achieved its success in the industry by establishing a strong reputation for providing valuable services to

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

its customers. Caliber has expended substantial amounts of money, time, and resources to hire employees that would build on and strengthen Caliber's reputation, and to build strong branch offices in key areas across the country.

7.      CrossCountry is a limited liability corporation organized and existing under the laws of the State of Delaware. It has its principal place of business in Brecksville, Ohio. Upon information and belief based on public filings, CrossCountry's members are citizens of Ohio.

8.      CrossCountry is also a retail mortgage lender, and as such, is a direct competitor of Caliber. Upon information and belief, CrossCountry has branch offices across the United States.

### VENUE AND JURISDICTION

9.      Jurisdiction is proper pursuant to 28 U.S.C. §1331 because Caliber has asserted a claim for statutory misappropriation of trade secrets under the *Defend Trade Secrets Act of 2016*, 18 U.S.C. § 1836 *et seq*. The Court has supplemental jurisdiction over Caliber's state law claims pursuant to 28 U.S.C. § 1367 because Caliber's other claims are so related to Caliber's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

10.      Venue is proper in the United States District Court for the Western District of Washington because CrossCountry does business in this judicial district, many of the transactions and occurrences giving rise to this litigation occurred in this judicial district, and Caliber suffered harm in this judicial district.

### FACTS SUPPORTING CALIBER'S CAUSES OF ACTION

A.      **CALIBER'S BUSINESS AND THE DEPARTED EMPLOYEES' ROLE WITH CALIBER**

11.      Caliber is a leader in the mortgage services industry and is engaged in the business of originating, processing, underwriting, and closing of mortgage loans nationwide. Caliber engages in interstate commerce.

*AMENDED COMPLAINT - 3*
*(2:22-cv-00616-RAJ)*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

12.     CrossCountry is a direct competitor in the mortgage services industry, offering similar services.

13.     In an unusually short period of time, Cross Country hired upwards of 80 employees from Caliber ("Departed Employees"). The Departed Employees included the following who worked in the below listed offices:

    a.  Seattle, Washington

        i.  Branch/Sales Manager- Mark Everts

        ii.  Sales Manager- Veronique (Nikki) Benson

        iii.  Loan Consultants- Hans Illingworth, Timothy Lauch, Michelle Muqtadir, Melissa Medved, and Lisa Mishkin

        iv.  Support Staff- Arianna Reed, Nabil Muqtadir, Angela Craig, Joni Lynn La Clair, Beth Faulkner, Jennifer Wong, and Erin McDougall

    b.  Bothell, Washington

        i.  Branch Manager- Mason Buckles

        ii.  Loan Consultant- Duane Martin

        iii.  Support Staff- Carly McEachran, Jami McVicker, Meagan Bright, Brianne Joseph, Mariko Deering, Brett Drobot, Stephanie Morrison, Jennica Gillaspy, and Angela Munoz

    c.  Kirkland, Washington

        i.  Loan Consultants- Khalisa Davies, Leigh Spearing, and Lori Johanson

        ii.  Support Staff- Alexandra Watkins, Heather Morris, Megan Hershgold, Amy Stewart, Kevin Williams, and Kylie Acacio

    d.  Bellingham, Washington

        i.  Branch Manager- Melanie Pysden

        ii.  Loan Consultant-  Charlotte Pros

*AMENDED COMPLAINT - 4*
*(2:22-cv-00616-RAJ)*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

        iii.   Support Staff- Jennifer Ahlbom, Kaley Stoner, and Nickole Murphy

e.  Kent, Washington

      i.   Sales Manager- Ryan Mallory

      ii.   Loan Consultants- Jessica Ho, Craig Benson, Matthew Matteo, and Aleksandr Melnik

      iii.   Support Staff- Nicole Losh, Jacqueline Hughes, Jacob Franich, Natasha Davila, Ashley Lund, Christopher Post, Matthew Souto, and Janet Auh

f.  Issaquah, Washington

      i.   Branch Manager- James Vann

      ii.   Sales Manager- Heide Green

      iii.   Loan Consultants- Kerry Travers ,Tony Chow, and Carol Rudd

      iv.   Support Staff- Taylor Barnecut, Raelena Ellison, Jacob Smith, Stacie Lindal, Andrea Vann, Hannah Grant, Marcella Jewett, and Jacob Keil

g.  Bellevue, Washington

      i.   Branch Manager- Casey Granston

      ii.   Loan Consultant- Kevin Chapman

      iii.   Support Staff- Paese Bautista (Processor)

h.  Enumclaw, Washington

      i.   Sales Manager- Benjamin Craighead

i.  Anacortes, Washington

      i.   Sales Manager- Ryan Martin

      ii.   Support Staff- Karen Norvell

j.  Roslyn, Washington

      i.   Sales Manager- Stephen Jaffe

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

k.  Lake Oswego, Oregon

     i.  Loan Consultant- Dawn Robbins

l.  Dallas, Texas

     i.  Sales Manager- Kathleen Hays

m.  Frisco, Texas

     i.  Sales Manager- Jeannie Martin-Smith

n.  Tampa, Florida

     i.  Loan Consultant- Sandra Cardenas

o.  Bartlett, Tennessee

     i.  Sales Manager- Phillip Harkins

p.  Manteca, California

     i.  Sales Manager- Jose Villegas

     ii.  Loan Consultant- Dan Mendoza

q.  Merced, California

     i.  Loan Consultant- Julia Sanchez-Contera

r.  Stockton, California

     i.  Branch Manager- Leilani Medina

     ii.  Sales Managers- Angela Jimenez and Rodolfo Ochoa

14.     In addition, on or about March 8, 2022, CrossCountry hired Jolene Hood, an Underwriting Manager for Caliber. Upon information and belief, there are others who have departed, or plan to depart, for CrossCountry.

15.     Branch Managers and Sales Managers (e.g., Everts, Granston, Buckles, Craighead, Mallory, Pysden, Vann, Medina, Villegas, Martin, Benson, Green, Jaffe, Harkins, Hays, Martin-Smith, Medina, Jimenez, and Ochoa) for Caliber are responsible for originating mortgage loans for Caliber and for supervising other managers, loan originators, and/or

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

support staff. Their duties include oversight of branch operations, business growth, and recruiting loan originators.

16.     Loan Consultants (or Loan Officers/Loan Originators) are licensed salespeople who source potential borrowers and work with borrowers directly through the lending process.

17.     Operations staff (e.g. underwriters, processors, production assistants, closers, office administrators) and production assistants work with the Loan Consultants—and often directly with the borrowers—to prepare loan files for closing.  Operations staff and production assistants are critical in the lending process.

18.     Each of the above employees (Managers, Loan Consultants, Operations staff, and Production Assistants) play a pivotal role in Caliber's success.

19.     The Departed Employees typically owed contractual duties, duties of loyalty, and/or fiduciary duties to Caliber. In particular, the managers who had supervisory responsibility over others had express contractual obligations.

**B.     CROSSCOUNTRY'S MASTER PLAN FOR ITS ILLEGAL SCHEME**

20.     CrossCountry's pre-meditated scheme directed at Caliber started in or about February 2021 when it hired Martin-Smith in Texas. In March 2021, CrossCountry then hired Hays, also in Texas.

21.     In July 2021, CrossCountry hired Harkins in Tennessee.

22.     In October 2021, CrossCountry struck again, this time increasing the number of people it hired. Cross Country hired Travers, Vann, Chow, Jaffe, and Green in Washington. In November and December 2021, CrossCountry added Rudd and Pros in Washington.

23.     Although already significant, this was only the beginning of CrossCountry's planned extensive raid of Caliber employees.

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

24.     CrossCountry's methods and intentions were spelled out in connection with its hiring of Mark Everts. On December 3, 2021, Everts described the framework for Scott Foreman, Executive Vice President of CrossCountry, for recruiting and bringing over teams of Caliber employees to CrossCountry (the "Master Plan") in the Northwest. A copy of the email between Everts and Foreman is attached hereto as **Exhibit "A."**

25.     According to the Master Plan:

    a.   Everts would "set up an office and get it staffed with at least 4 to 8 top producers."

        i.   Everts specifically identified Illingworth and Muqtadir.

        ii.   Demonstrating that the recruiting and solicitation had already occurred, Everts commented about Muqtadir that "she is having more hesitations (according to Hans) – but she is loyal to me and would sure jump if she knew I was on board."

    b.   Everts described four other "LCs" who were "loyal" to him, and provided Foreman with information about their production and personal status.

    c.   Everts then commented "[t]here are others."

    d.   Everts concluded by informing CrossCountry that he would need significant financial inducement from CrossCountry because "any offer received to leave would have to so outweigh the offer to stay that it makes sense to go thru the rig-a-ma-roll . . . of uprooting my team and going elsewhere."

26.     Upon information and belief, CrossCountry had similar interactions about financial inducements and hiring strategies with other Departed Employees.

27.     With the Master Plan in place, on or around December 16, 2021, CrossCountry provided Everts with an offer letter that included a sign on bonus of $1,000,000 and an additional volume bonus of $500,000 if his branch (*i.e.,* those he brings with him from

Caliber) achieves $600 million in loan origination. A copy of the offer letter for Everts is attached hereto as **Exhibit "B."**

28.     Everts signed the CrossCountry offer letter on December 19, 2021.

29.     CrossCountry offered Everts the $1.5 million in bonuses as an inducement for Everts to violate his obligations to Caliber and "uproot" his team, as he explained in the Master Plan.

30.     After signing the CrossCountry offer letter, Everts remained at Caliber—without notifying any of his supervisors—for nearly three more weeks.

31.     No doubt, Everts used that time working on the "rig-a-ma-roll" of "uprooting his team" and taking them to CrossCountry as planned. Everts—and the others he was recruiting—also used that time to misappropriate Caliber's confidential information, in particular extensive amounts of borrower information for use at (and by) CrossCountry.

32.     The next phase of the raid—as laid out in the Master Plan—started on January 7, 2022 when Illingworth resigned to join CrossCountry. Illingworth now works for CrossCountry as a Regional Manager in Bothell, Washington.

33.     On January 10, 2022, Everts, Muqtadir, and Lauch resigned to join CrossCountry.

      a.   Everts now works for CrossCountry as a Regional Vice President in Bothell, Washington;

      b.   Muqtadir now works for CrossCountry as a Branch Manager in Bothell, Washington;

      c.   Lauch now works for CrossCountry as a Mortgage Adviser in Seattle, Washington;

34.     On January 11, 2022 (one day after he resigned), Everts emailed Caliber employee Danny To (a high producing Loan Officer)—at his personal email address—

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

soliciting Mr. To to leave Caliber and join CrossCountry. In the email, Everts attempted to induce Mr. To to leave Caliber for CrossCountry with reference to a $400,000 sign on bonus.

    35.    As it played out, the Master Plan grew extensively. Soon after:

    a.    On January 14, Robbins resigned to join CrossCountry in Oregon.

        i.    Robbins now works for CrossCountry as a Branch Manager in Scottsdale, Arizona.

    b.    On February 4, 2022, Cardenas resigned to join CrossCountry.

        i.    Cardenas now works for CrossCountry as a Sales Manager in Naples, Florida.

    c.    On February 11, 2022, Granston resigned to join CrossCountry.

        i.    Granston now works for CrossCountry as a Regional Vice President in Bellevue, Washington.

    d.    On February 14, 2022, Buckles resigned to join CrossCountry.

        i.    Buckles now works for CrossCountry as a Regional Vice President in Bellevue, Washington.

    e.    On February 15, 2022, Craighead resigned to join CrossCountry.

        i.    Craighead now works for CrossCountry as a Senior Loan Officer in Bellevue, Washington.

    f.    On February 18, 2022, Davies and Johanson resigned to join CrossCountry.

        i.    Davies now works for CrossCountry as a Regional VP in Bellevue, Washington.

        ii.    Johanson now works for CrossCountry as a Senior Loan Officer in Bellevue, Washington.

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

g. On February 25, 2022, Medved resigned to join CrossCountry.

    i. Medved now works for CrossCountry as a Loan Officer in Bothell, Washington.

h. On February 28, 2022, Mallory, Ho, and Craig Benson resigned to join CrossCountry.

    i. Mallory now works for CrossCountry as a Regional Vice President in Bellevue, Washington.

    ii. Ho now works for CrossCountry as a Loan Originator in Bellevue, Washington.

    iii. Craig Benson now works for CrossCountry as a Branch Manager in Bellevue, Washington.

i. On March 2, 2022, Chapman resigned to join CrossCountry.

    i. Chapman now works for CrossCountry as a Loan Officer in Bellevue, Washington.

j. On March 3, 2022, Melnik resigned to join CrossCountry.

    i. Melnik now works for CrossCountry as a Loan Originator in Bellevue, Washington.

k. On March 4, 2022, Matteo resigned to join CrossCountry.

    i. Matteo now works for CrossCountry as a Loan Officer in Bellevue, Washington.

l. On March 7, 2022, Mishkin and Martin resigned to join CrossCountry.

    i. Mishkin now works for CrossCountry as a Senior Loan Officer in Bothell, Washington.

    ii. Martin now works for CrossCountry as a Loan Officer in Bellevue, Washington.

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

m.  On March 11, 2022, Veronique (Nikki) Benson resigned to join CrossCountry.

   i.   Nikki Benson now works for CrossCountry as a Branch Manager in Bellevue, Washington.

n.  On March 16, 2022, Spearin resigned to join CrossCountry.

   i.   Spearin now works for CrossCountry as a Loan Officer in Bellevue, Washington.

o.  On March 22, 2022, Pysden resigned to join CrossCountry.

   i.   Pysden now works for CrossCountry as a Senior Loan Officer / Sales Manager in Bellevue, Washington.

   ii.  Pysden brought a team of people with her (see below).

p.  On April 1, 2022, Ryan Martin resigned to join CrossCountry.

   i.   Martin now works for CrossCountry as a Loan Officer in Bellevue, Washington.

q.  On April 18, 2022, Medina, Villegas, Mendoza, Sanchez-Contrera, Jimenez, and Ochoa resigned to join CrossCountry.

   i.   Medina now works for CrossCountry as a Branch Manager in Modesto, California.

   ii.  Villegas now works for CrossCountry as a Loan Officer in Modesto, California.

   iii. Mendoza now works for CrossCountry as a Loan Officer in Modesto, California.

   iv.  Sanchez-Contera now works for CrossCountry as a Loan Officer in Modesto, California.

   v.   Jimenez now works for CrossCountry as a Loan Officer in Modesto, California.

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

vi.  Ochoa now works for CrossCountry as a Loan Officer in Modesto, California.

36.     The above does not include the support staff—over 40 employees—who resigned along with the producers with whom they worked. Essentially, upon information and belief, CrossCountry had the producers solicit and recruit their support teams to ensure a smooth transition.

37.     For example, in connection with her departure, Pysden, using her Caliber email and contact list (hundreds, if not thousands of contacts), boldly sent a solicitation email on behalf of CrossCountry and provided new contact information. The solicitation email makes clear Pysden orchestrated the departure of her entire "team" in violation of her non-solicitation obligations (which CrossCountry knew about). Pysden wrote:

> The Pysden Team will be leaving Caliber Home Loans to join Cross Country Mortgage this week.
>
> I've accepted a Branch Manager position with Cross Country Mortgage and in doing so we will be able to focus on what matters most to us as a team, YOU. This new role offers me oversight on all facets including underwriting and interest rate pricing, meaning we'll be more efficient and competitive than ever!
> My entire team is joining me, and we have a dialed-in plan to make the transition as seamless as possible. Our goal is limited disruption and impact to our valued clients and business partners while we move quickly to get things up and running.
> I apologize for the abrupt nature of this notice... Unfortunately, our industry operates as such that when a decision to separate is made, we have zero lead time or traditional "2 weeks' notice".
> While this is a bittersweet decision having worked at Caliber for the past 9 years, it's the right move and ultimately done in service of you and all of our valued business partners and clients.
>
> By making this move we will be expanding our available programs, including true bridge financing and custom construction loans. All while offering improved interest rates!

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

We look forward to continuing our relationship with you in our new chapter.

Our new email address is PysdenTeam@MyCCMortgage.com and will be active on March 23, 2022.

In the meantime, please feel free to call us at (360) 305-7488 and we would be happy to address any questions you may have. I look forward to reconnecting very soon!

Please stay tuned,
Melanie Pysden

The Pysden Team

D 360.305.7488
F 425.818.4823
E PysdenTeam@MyCCMortgage.com

## C.      CALIBER'S RESTRICTIVE COVENANT AGREEMENTS

38.      To protect its legitimate business interests and in exchange for valuable consideration, Caliber generally requires its sales employees to execute restrictive covenant agreements in favor of Caliber that prohibit employees from (1) soliciting Caliber employees to end their employment with Caliber; (2) removing loans in process at Caliber; and (3) retaining, using, or disclosing Caliber's confidential business information.

39.      Many of the Departed Employees were subject to one or more of the following agreements: (1)*Caliber Home Loans, Inc. Non-Solicitation, Confidentiality, Non-Disclosure and Previous Employer (prior to Cobalt) Obligations Policy & Attestation for Transitioning Cobalt Mortgage Loan Originators (MLOs), Sales Managers (SMs), and Branch Managers (BMs)* ("Agreement for MLOs, SMs, and BMs"), (2) *Caliber Home Loans, Inc. Non-Solicitation, Confidentiality, Non-Disclosure and Previous Employer (prior to Cobalt) Obligations Policy & Attestation for Cobalt Transitioning Production Partners and Mortgage Loan Originator Assistants* ("Agreement for PPs and MLOAs"), (3) *Caliber Home Loans, Inc. Employee Confidentiality and Non-Solicitation Policy* ("Confidentiality and Non-

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Solicitation Agreement"), and (4) *Company Terms and Conditions For Variable Pay Plans*

("Variable Pay Plans Agreement).

40.     Specifically, with regard to the prohibition on solicitation of employees, the

Agreement for MLOs, SMs, and BMs states:

> **Non-Solicitation**: During employment and for a period of one year after employment with the Company ends, you will not directly, separately or in association with others, interfere with, impair or damage the Company's business by soliciting or encouraging any of the Company's employees to discontinue their employment with the Company.  For Mortgage Loan Originators, Sales Managers, and Producing Branch Managers, this restriction does not apply to members of your personal production team.

41.     Everts, Muqtadir, Buckles, Illingworth, Johanson, and Pysden (among others)

are subject to the non-solicitation provision set forth in the Agreement for MLOs, SMs, and

BMs.

42.     The Agreement for PPs and MLOAs states:

> **Non-Solicitation of Employees, Consultants and Independent Contractors**: In order to protect and preserve the Company's Confidential Materials, and Company's significant investment in developing its business, you agree that commencing as of your employment date for a period of two years following your termination of employment with the Company, you shall not, directly or indirectly, separately or in association with others, interfere, disrupt or damage Company's business by soliciting, hiring, recruiting, attempting to recruit, or causing or assisting in the recruitment of any employee, consultant or exclusive independent contractor of Company who has served in any such capacity at any time within the twelve (12)-month period immediately prior to your separation from employment, for employment with another person or entity.  This restriction applies regardless of the reason for separation of employment.

43.     Davies and Lauch (among others) are subject to the non-solicitation provision

set forth in the Agreement for PPs and MLOAs.

*AMENDED COMPLAINT - 15*
*(2:22-cv-00616-RAJ)*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

44.     The Confidentiality and Non-Solicitation Agreement states:

> **Non-Solicitation**.  During employment and for a period of one year after employment with the Company ends, Employees will not knowingly, either directly, separately or in association with others, interfere with, impair or damage the Company's business by soliciting or encouraging any of the Company's employees with whom the Employees worked or who were in the same department of the Company, or knowingly causing others to solicit or encourage any of those employees to discontinue their employment with the Company.

45.     Granston, Mallory, and Medved (among others) are subject to the non-solicitation provision set forth in the Confidentiality and Non-Solicitation Agreement.

46.     Moreover, Granston, Craighead, Mallory, Davies, Buckles, and Pysden (among others) are subject to the Variable Pay Plans Agreement, which also has a non-solicitation provision:

> **Non-Solicitation:**  In consideration of participating in the Plan, the Participant specifically agrees that during employment and for a period of one year after employment with the Company ends, unless stated otherwise within Participant's agreement, Participant will not, either directly, separately or in association with others, interfere with, impair or damage the Company's business by soliciting or encouraging any of the Company's employees with whom the Participant worked or who were in the same department of the Company, or causing others to solicit or encourage any of those employees to discontinue their employment with the Company.

47.     With regard to the prohibition on removing loans, the Agreement for MLOs, SMs, and BMs, Agreement for PPs and MLOAs, and the Confidentiality and Non-Solicitation Agreement typically (the language is not in Granston's agreement) include a provision stating that:

> Conversion or removal of active loans in process with Caliber at your time of termination is prohibited.

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

48.     With regard to the prohibition on the use and disclosure of Caliber's confidential information, the Agreement for MLOs, SMs, and BMs and the Agreement for PPs and MLOAs state:

> **Confidentiality**:  You acknowledge, understand and agree that all "Confidential Material," as defined below, is the exclusive and confidential property of the Company which shall at all times be regarded, treated and protected as such in accordance with this Section 2/3.   You acknowledge that all such Confidential Material is in the nature of a trade secret.  For purposes of this Policy, "Confidential Material" means information, documents, materials, data, and other information that is available to or used in your business/by you and (a) is proprietary to, about or created by the Company, (b) gives the Company a competitive business advantage or the opportunity of obtaining such advantage or the disclosure of which would be detrimental to the interests of the Company, or (c) is designated as Confidential Material by the Company, is known by you to be considered confidential by the Company, or from all the relevant circumstances should reasonably be assumed by you to be confidential and proprietary to the Company.
>
> …
>
> Upon termination of employment, you shall promptly deliver to Company (or its designee) all written materials, records, software and documents made by you or which came into your possession prior to or during your employment, concerning the business and affairs of Company, including, without limitation, all materials containing Confidential Material.

49.     The Confidentiality and Non-Solicitation Agreement (which, for example, Granston, Mallory, and Medved are subject to), states:

> **Confidential and Proprietary Information and Data**.  All non-public confidential information relating to the Company's operations, procedures, methods, pricing, customers, employees, contractors, vendors, investors, lenders, financial condition, or results of operations, and any other non-public information relating to the Company acquired during employment with the Company does and shall constitute valuable, proprietary and confidential information of the

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

> Company, and shall not either during or after employment, be disclosed to any third party or used for one's own advantage or the advantage of any third party, except in connection with the performance of duties and responsibilities as an employee of the Company….Upon termination of employment with the Company, Employees must return the originals and any copies of confidential information provided by the Company.

50.   The Agreements were reasonable and necessary to protect Caliber's legitimate business interests, including, among other things, its Confidential Information (defined below), its goodwill, its office stability, and its customer relations.

51.   The Agreements were and/or are in full force and effect at all times material, including at the time the Departed Employees violated their obligations.

**D.   CALIBER PROTECTS ITS CONFIDENTIAL INFORMATION**

52.   Caliber has spent significant time, effort, and money to develop, acquire, maintain, and protect its confidential and proprietary business information, including customer/prospect names and contact information, confidential and proprietary information provided to Caliber by customers during the lending process (as described below) and/or other third parties; and non-public employee information (the Caliber "Confidential Information").

53.   For example, during the lending process, customers provide Caliber with highly sensitive private information, including bank records, credit information, social security numbers, and other financial and personal information. Customers have an expectation that Caliber will maintain the confidentiality of that information, and Caliber is required by industry laws and regulations to protect that confidentiality. Maintaining the confidentiality of customer information is critical to maintaining Caliber's goodwill and trust with its customers and reputation within the industry. When a customer's confidential information is compromised, it significantly harms Caliber's goodwill and trust with its customers and reputation within the industry.

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

54.     Caliber's Confidential Information is among its most valuable assets, provides Caliber with a competitive advantage, and would be very valuable to a competitor.

55.     Caliber's interest in protecting its Confidential Information is critical in that, among other things:

    a.   Caliber utilizes its "pipeline" and other customer information to service its existing customers and to identify potential customers, referral sources, and other business opportunities nationwide. The "pipeline" typically includes, among other things, the names, loan numbers (if assigned), loan application details, credit information, and other personal financial information of customers at all stages of the loan origination process, from first contact through funding. Caliber considers that highly confidential customer information;

    b.   Caliber is required by law to maintain the confidentiality of its customer's private information (*e.g.,* social security numbers, bank account, and other financial information);

    c.   Caliber spends a substantial amount of money and resources to advertise its services and the Confidential Information allows Caliber to identify advertising opportunities; and

    d.   Caliber utilizes its trade secrets in interstate commerce to originate process, underwrite, close, fund, and service mortgage loans throughout the United States where it is licensed to do business.

56.     Caliber takes reasonable steps to protect its Confidential Information, including, among other things:

    a.   Requiring execution of confidentiality and non-solicitation agreements, maintaining policies and procedures for the protection and security of such

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Confidential Information (*e.g.,* policies regarding the use of Caliber's email system), and limiting access to the Confidential Information (*e.g.,* password protection and restricted access);

b. Providing training to all employees on protecting the confidentiality of information;

c. Requiring employees to execute annual attestations that they have read and understood specific policies governing the protection and security of Confidential Information and employees' responsibilities related thereto; and

d. Protecting its offices and computer systems with physical security including locks and passwords.

57.     Due to their roles in the company, in the scope of their employment Caliber entrusted the Departed Employees with extensive access to Caliber's Confidential Information.

58.     Caliber has never authorized the Departed Employees to retain, use, or disclose Caliber's Confidential Information outside the scope of their employment with Caliber, or for their own benefit, or for the benefit of a competitor, all of which is prohibited conduct.

59.     Caliber has never authorized its Confidential Information to be disclosed to CrossCountry, retained by CrossCountry, or used in connection with CrossCountry's business.

60.     Caliber's Confidential Information—specifically the confidential customer information at issue here—is deserving of trade secret protection under the law.

**E.     CALIBER SENT DEMAND LETTERS TO DEPARTED EMPLOYEES AND CROSSCOUNTRY**

61.     On January 11, 2022, Caliber sent a demand letter to Everts regarding his restrictive covenants and Caliber's concerns about his misconduct. Caliber copied CrossCountry on the letter.

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

62.     On January 18, 2022, CrossCountry responded to the letter sent to Everts. CrossCountry denied "any allegation that it acted wrongfully or inappropriately in anyway."

63.     CrossCountry also denied that "Mr. Everts has diverted any loans or that he has recruited any Caliber employees for employment at CCM."

64.     CrossCountry's denial is in direct contrast to the Master Plan Everts shared with CrossCountry's Executive Vice President that demonstrates he had been recruiting and planned additional recruiting, as well as being contrary to Everts' overt solicitation email to Mr. To on January 11, 2022.

65.     On January 18, 2022, Caliber initiated litigation against Everts in the Superior Court in King County, Washington ("Everts Litigation"). The Everts Litigation resulted in a Stipulated Injunction.

66.     As CrossCountry boldly moved forward with the Master Plan, following their departures, Caliber sent cease and desist demand letters to numerous of the Departed Employees, including to (among others) Everts, Illingworth, Buckles, Granston, Muqtadir, Johanson, Mallory, Lauch, Medved, Craighead, Davies, Nikki Benson, and Pysden.

67.     The letters attached copies of their respective Agreements and demanded the immediate return of Caliber's confidential information. Caliber copied CrossCountry on each of the letters.

68.     None of the Departed Employees (other than Everts in the Everts Litigation) directly responded substantively, and none returned any confidential information to Caliber.

69.     On March 15, 2022, CrossCountry—despite having hired more than 50 Caliber employees by this point—responded by stating it did not have enough information to "adequately investigate."

*AMENDED COMPLAINT - 21*
*(2:22-cv-00616-RAJ)*

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

**F.     CROSSCOUNTRY CAUSED THE DEPARTED EMPLOYEES TO VIOLATE THEIR AGREEMENTS AND OTHER LEGAL OBLIGATIONS OWED TO CALIBER**

70.     CrossCountry was aware of, or reasonably should have been aware of, the Departed Employees restrictive covenants and other legal obligations owed to Caliber, but still encouraged and induced the Departed Employees to breach their restrictive covenants and other legal obligations owed to Caliber.

71.     As evidenced by the Master Plan, CrossCountry knew that the Departed Employees had significant influence over each other with regard to joining CrossCountry. Indeed, Everts explicitly told CrossCountry's Executive Vice President that he had significant influence over other Caliber employees and could persuade them to leave Caliber for CrossCountry because they were "loyal" to him.

72.     As evidenced by the Master Plan, CrossCountry also knew that the Departed Employees—particularly Everts and the other managers/supervisors—using their influence would be an effective mechanism to solicit successfully other Caliber employees to terminate their employment relationship with Caliber.

73.     Upon information and belief, based on their knowledge of Caliber's employees and its Confidential Information (*e.g.,* compensation information, employee performance information, production, customer pipeline information, etc.), for months, the Departed Employees had been soliciting each other at the direction and encouragement of CrossCountry.

**G.     CROSSCOUNTRY AND THE DEPARTED EMPLOYEES CONSPIRED AND ACTED IN CONCERT TO MISAPPROPRIATE CONFIDENTIAL AND TRADE SECRET INFORMATION**

74.     The Departed Employees were aware of each other's improper activities and participated together in the improper activities.

75.     By way of example, using their Caliber email accounts, on December 17, 2021—weeks before resigning but AFTER receiving CrossCountry's offer of employment— Everts emailed Illingworth and Muqtadir client pipeline data, which Everts described as

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

"good as it has contact info for your clients on there (<u>you know, in case you need that for some reason or another</u>) ☺." (emphasis added). The emails are described in more detail below.

76.   Addition examples of misappropriation include:

a.   <u>Everts</u>

i.   On 12/12/21, he forwarded a pipeline spreadsheet entitled "Everts-Pipeline Draft V.4.xlsx" to his personal email account (evertsmark@gmail.com), which contains information for 736 loans/customers including customer name, loan number, product code, loan purpose, loan amount, interest rate, property appraisal value, funded date, property address, customer mailing address, email address, and phone number, realtor information, and listing agent information.

ii.   On 12/17/21, Everts emailed Illingworth a pipeline spreadsheet entitled "Seattle East-Hans.xlsx" which contains information for 430 loans/customers including loan number, Caliber division/regional/branch, loan representative, ownership type, borrower name, cell phone number, and email address, property address, property type, interest rate, lien position, loan type, term, term remaining, appraisal value, loan balance information, product name, loan purpose, refinance purpose if applicable, and fund date. In the body of the email, Everts said to Illingworth: "this list is good as it has contact info for your clients on there (you know, in case you need that for some reason or another) ☺."

iii.   On 12/17/21, Everts emailed Muqtadir a pipeline spreadsheet entitled "Seattle East-Michelle Muqtadir.xlsx" which contains information for

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

465 loans/customers including loan number, Caliber division/regional/branch, loan representative, ownership type, borrower name, cell phone number, and email address, property address, property type, interest rate, lien position, loan type, term, term remaining, appraisal value, loan balance information, product name, loan purpose, refinance purpose if applicable, and fund date. In the body of the email, Everts said to Muqtadir: "this list is good as it has contact info for your clients on there (you know, in case you need that for some reason or another) ☺."

iv.   On 12/17/21, Everts emailed two spreadsheets entitled "Eastlake Branch-All UP.xlsx" and "Seattle East-Mark Everts.xlsx" to his personal email account (evertsmark@gmail.com) and a third-party (willhowington@hotmail.com). The "Eastlake Branch" spreadsheet contains a list of 4,615 loans, including loan account number, Caliber division/region/branch, loan representative, ownership type, borrower information, property type, rate, lien position, loan type, length of term, term remaining, appraisal value, and product. The "Seattle East" spreadsheet contains a list of 321 loans, including loan account number, Caliber division/region/branch, loan representative, ownership type, borrower information, property type, rate, lien position, loan type, length of term, term remaining, appraisal value, and product name.

v.   On 12/19/21, Everts forwarded five attachments to his personal email account (evertsmark@gmail.com) with the subject line of the email being "scripts." The five attachments consist of prior emails with scripts/templates for completing a loan application, explaining closing

costs and reserves, and explaining other steps of the loan process to customers.

vi. On 12/19/21, Everts forwarded three spreadsheets entitled "A Agents Current as of 09.08.21.csv," "B Agents Current as of January 2020.csv," and "C Agents Current as of January 2020.csv" to his personal email account (evertsmark@gmail.com) which contain information relating to 91 agents including name, job title, address, phone number, email address, and agent's company.

vii. On 12/21/21, Everts forwarded 15 attachments to his personal email account (evertsmark@gmail.com). The attachments consist of email exchanges with Caliber customers.

viii. On 1/5/22, Everts forwarded a spreadsheet entitled "AMP DTC Borrower Benefit Report-Everts.xlsx" to his personal email account (evertsmark@gmail.com) containing loan account information for 101 loans, including borrower names, addresses, phone numbers, email addresses, loan type, and interest rate.

b.  Buckles

i. On 1/25/22, Buckles forwarded 32 documents to his personal email account (mason_buckles@hotmail.com). The documents contain templates for servicing mortgage loans (*e.g.,* lender introduction script, rate lock offer script, post funding follow up script, 203k loan script).

ii. On 2/5/22, Buckles forwarded 14 documents to his personal email account (mason_buckles@hotmail.com) with the subject line "Marketing Campaign Main." The documents appear to be tracking gifts to customers and consist of various spreadsheets containing

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

customer/loan information including customer name, funded date, loan purpose, property address, and loan number.

iii. On 2/5/22, Buckles forwarded an email with the subject line "'VIP' Clients" to his personal email account (mason_buckles@hotmail.com). The email lists Caliber clients that consistently refer Buckles to other potential customers.

iv. On 2/12/22, Buckles forwarded to his personal email account (mason_buckles@hotmail.com) email threads for four active customers. The emails contain customer information including loan amount, interest rate, customer's assets and liabilities, income, and FICO scores.

v. On 2/12/22, Buckles emailed 10 different customers with the subject line "Hoping to connect ASAP." In each email, Buckles asked if he could "set up a time ASAP to chat…I have some update I need to share and want to make sure we connect in order to give you all the details." Upon information and belief, Buckles arranged these calls with Caliber customers to solicit their business and divert their loans to CrossCountry.

c. Granston

i. On 2/10/22, Granston forwarded a spreadsheet entitled "Granston Pipeline.xlsx" to his personal email account (caseygranston@me.com). The spreadsheet has 10 sheets labeled: "Current Pipeline," "Preapprovals," "Awesome Nossum," "Top 40 Realtors," "Closed Pipeline," "Lead Tracker-2017," "Lead Tracker-2018," "Lead Tracker-2019," "Lead Tracker-2020," and "Lead Tracker-2021." The Lead

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Tracker sheets contain information related to referral sources, including name, job, number of leads, closed leads, active leads, volume funded, and lead names still available. The Lead Tracker sheets also contains year-end numbers including phone calls made, face to face meetings, purchase volume, leads, and closed loans. The Closed Pipeline sheet contains information for 1,012 customers/loans, including customer name, property purpose, loan type, close date, purchase or refinance, loan amount, referral source, seller's agent, listing agent, and rate. The Preapprovals sheet contains information for 167 customers, including name, referral source, purchase price, down payment, date started, date last checked in with customer, customer's phone number, and specific notes for each. The Current Pipeline sheet contains information for 7 customers, including name, close date, selling agent, listing agent, date disclosures sent, date disclosures signed, appraisal ordered date, date submitted to underwriting, date appraisal received, initial approval date, funded date, loan amount, purchase price, and loan type.

d.  Illingworth

i.  On 12/20/21, Illingworth forwarded the pipeline spreadsheet entitled "Seattle East-Hans.xlsx" from Everts to his personal email account (chancechillingsworth@gmail.com).

ii.  On 12/20/21, Illingworth forwarded two Caliber PowerPoint documents entitled "NW Top Performance November 2021.pptx" and "PSW Top Performance November 2021.pptx." and one spreadsheet entitled "October 2021 Monthly Lender Ranking.xlsx" to his personal email account (chancechillingsworth@gmail.com). The PowerPoints

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

contain information related to Caliber's top performers including funding dollars individually and funding dollars per branch. The spreadsheet contains information for approximately 10,400 lenders throughout Arizona, California, Colorado, Nevada, New Mexico, Oregon, Utah, and Washington, including rank by volume based on county, lender name, number of closings, market share by closings, total volume, and market share by volume.

iii.   On 12/23/21, Illingworth forwarded a spreadsheet entitled "Agent History.xlsx" to his personal email account (chancechillingsworth@gmail.com). The spreadsheet contains information for 99 customers/loans, including name, address, buyer's agent, agent's company, phone number, and email address, listing agent, list agent's company, phone number, and email address.

iv.   On 12/23/21, Illingworth forwarded 10 documents, including spreadsheets, to his personal email account (chancechillingsworth@gmail.com) containing information about servicing jumbo loans. One of the documents entitled "Caliber jumbo comparison.pdf" shows the difference between three Caliber jumbo loan products. Another document entitled "Jumbo comparison 10.8.pdf" identifies the Caliber "Jumbo Program Matrix."

v.   On 12/29/21, Illingworth forwarded a spreadsheet entitled "Hans.xlsx" to his personal email account (chancechillingsworth@gmail.com) which contains information of 103 customers/loans including customer name, address, phone number, email address, loan type, original value,

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

unpaid principal balance, loan to value, interest rate, lead event date, lead event category, and lead event.

    vi.  On 1/7/22, Illingworth sent an email with the subject line "Surveys" to his personal email account (chancechillingsworth@gmail.com) attaching 36 documents. The documents consist of survey responses from Caliber customers containing customer information including customer name, email address, and transaction ID number.

e.  <u>Johanson</u>

    i.  On 2/15/22, Johanson sent an email to her personal email account (lorijohanson22@gmail.com) attaching 10 documents, including a spreadsheet entitled "Copy of TBD List.xlsx." The spreadsheet contains information of 33 customers/potential customers, including name, email address, and home address.

    ii.  On 2/18/22, Johanson sent an email to her personal email account (lorijohanson22@gmail.com) attaching six spreadsheets entitled "LoriAddresses.csv" (lists over 400 contacts), "Real Estate Agents 2020.csv" (lists over 30 real estate agents), "agentsclients.csv" (identifies over 40 agents and clients), "excelVIP.xlsx" (lists more than 400 customers including each customers' name, address, email address, phone number, funded date, loan type, loan purpose, interest rate, loan number, and loan amount), "lori johanson data base 2019.xlsx" (lists more than 400 customers including the customers' name, address, email address, phone number, funded date, loan type, loan purpose, interest rate, loan number, and loan amount), and the "Copy of TBD List.xlsx" spreadsheet discussed above.

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

f.   Lauch

   i.   On 12/22/21, Lauch sent an email to his personal email account
       (timlauch@gmail.com) attaching two spreadsheets entitled "Partner
       Tracking.xlsx" and "Tim Client List.xlsx." The "Partner Tracking"
       spreadsheet contains six sheets as follows: "Partners" (contains list of
       62 agents and their email address, office address, and phone number);
       "VIP Home Address" (contains list of 8 agents and their contact
       information); "Prospects" (lists six names); "Leads" (lists five names,
       date each was last contacted, and referral source); "Preapprovals" (lists
       two names); and "Partners Holiday 21" (lists 57 agents and their
       contact information). The "Tim Client List" spreadsheet contains
       information of 400 customers/loans including customer name, email
       address, spouse's name, mailing address, phone number, date of birth,
       spouse's date of birth, referral source, and loan anniversary date.

   ii.   On 12/23/21, Lauch emailed a zip file entitled "Q4 2021" to his
       personal email account (timlauch@gmail.com). The zip file includes
       72 spreadsheets. Each spreadsheet is for a different customer and
       includes detailed loan and mortgage information (loan amount, down
       payment, sales price, monthly payment, and property taxes).

  iii.   On 12/28/21, Lauch sent an email to his personal email account
       (timlauch@gmail.com) attaching a pipeline spreadsheet entitled "TL
       Pipeline Report 2021.xlsx," which contains information of
       approximately 150 customers, including name, loan program, loan
       amount, referral source, and appraisal status.

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

iv.   On 1/6/22, Lauch sent an email to his personal email account (timlauch@gmail.com) attaching a zip file entitled Q3 2021. The zip files includes 75 spreadsheets. Each spreadsheet is for a different customer and includes detailed loan and mortgage information (loan amount, down payment, sales price, monthly payment, and property taxes).

g.   Mallory

i.   On 2/19/21, Mallory forwarded an email to his personal email account (ryan.m.mallory@gmail.com) attaching a spreadsheet entitled "Project Pipeline.pdf." The spreadsheet contains information relating to action items and status of same.

ii.   On 2/19/22, Mallory sent an email to the email address janet.u.auh@gmail.com attaching 32 documents, including an intake template, refinance script, current client referral script, sale meeting outline, Team Mallory Deck, and a spreadsheet entitled "YTD TOP AGENTS.xlsx," which contains information of approximately 125 agents including their volume in dollars for the years 2016 through 2021, number of leads, and includes volume in dollars by agent office for 2021.

h.   Muqtadir

i.   On 12/6/21, Muqtadir forwarded a spreadsheet entitled "Michelle 2014 – May 2021.xlsx" to her personal email account (michelle.muqtadir@gmail.com). The spreadsheet contains information for approximately 702 customers/loans including loan number, Caliber division/region/branch, product name and subgroup, borrower name

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

and contact information, lock date, funded date, loan type, purpose type, property address, customer's mailing address, interest rate, realtor information, listing agent's information, concession amount, estimated closing date, relock date, approval date, lead source, FICO score, and appraisal value.

ii. On 12/17/21, Muqtadir forwarded the pipeline spreadsheet entitled "Seattle East-Michelle Muqtadir.xlsx" sent to her by Everts.

iii. On 1/3/22, Muqtadir forwarded a spreadsheet to her personal email account (michelle.muqtadir@gmail.com) entitled "Copy of Cancelled and Credit Inquiry for last 6 months." The spreadsheet contains information of 57 individuals/customers including last 4 digits of social security number, address, and credit pull status.

iv. On 1/6/22, Muqtadir emailed a prospective customer advising him to gather documents for the mortgage process but to wait until the following week to send her anything (Muqtadir resigned on 1/10/22).

i. <u>Medved</u>

i. On 1/11/22, Medved sent an email to her personal email account (mvmedved@gmail.com) attaching six documents, including two spreadsheets entitled "COMMISSION PIPELINE.xlsx" and "MELISSA AGENTS.xlsx." The "COMMISSION PIPELINE" spreadsheet contains customer/loan information for each month from January 2016 through January 2022 (73 months total) including loan number, borrower name, loan amount, reason for loan, closing date, loan type, and commission due. Also included in the spreadsheet are year-end totals showing volume and units per month and year totals.

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

The "MELISSA AGENTS" spreadsheet contains information of 14 agents and their contact information.

ii. On 1/11/22, Medved sent an email to her personal email account (mvmedved@gmail.com) attaching four documents, including a spreadsheet entitled "Copy of Closed Loans Ron Howard 092116.xlsx," which contains a list of approximately 230 customers whose loan representative was Ron Howard and the customer's name, loan amount, rate, closing date, loan type, purpose, and property address. Also attached is a spreadsheet entitled "Copy of Ron Howard Closed Loans 022216.xlsx," which contains a list of the same information for approximately 400 customers whose loan representative was Ron Howard.

iii. On 1/14/22, Medved sent an email to her personal email account (mvmedved@gmail.com) attaching a spreadsheet entitled "Master list 01.14.2022.xlsx." This spreadsheet contains information of approximately 530 customers/loans including the customer's name, loan amount, type, rate, property address, realtor information, and listing agent information.

77.    Upon information and belief, the Departed Employees misappropriated the above-described confidential information acting in concert with CrossCountry and with its knowledge and approval, if not with its specific direction.

78.    Upon information and belief, the Departed Employees have used the misappropriated information on behalf of, and for the benefit of, CrossCountry.

79.    Moreover, Caliber believes that the misappropriated confidential information is in CrossCountry's possession and control and resides on its electronic systems.

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

80.     As an example, a borrower with a loan in process at Caliber had their credit pulled by CrossCountry without authorization. One of the Departed Employees, Nikki Benson, had been working on the loan at Caliber.

81.     As reported to Caliber, someone from CrossCountry (on Nikki Benson's team) reached out to the borrower and asked the borrower to switch over to use CrossCountry for the loan. The borrower did not know how CrossCountry got her information as the borrower had only filled out an application with Caliber and was not comfortable using any other lender.

82.     The additional unauthorized and unnecessary credit pull caused confusion to the borrower, could have a negative impact on the borrower, and had a negative impact on Caliber's reputation that a former employee had retained and used a borrower's confidential information without authorization.

**H.      CALIBER HAS LOST SIGNIFICANT REVENUE AS A RESULT OF THE ILLEGAL ACTIVITY**

83.     The Departed Employees (combined) were responsible for generating more than $2.3 billion in annual loan origination for Caliber and millions of dollars in profit for Caliber.

84.     Caliber had a reasonable expectation of receiving those profits on an annual basis.

85.     In addition, prior to enacting the Master Plan, CrossCountry had little market presence in the Pacific Northwest.

86.     CrossCountry wanted to convert that market presence, production, revenue, and profits to its own.

87.     To achieve its goal, as demonstrated by Everts' offer of employment, CrossCountry used significant financial incentives to induce the Departed Employees to breach their legal obligations owed to Caliber.

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

88.     CrossCountry has not only implemented the Master Plan, but it expanded it significantly as it unfolded.

89.     Upon information and belief, this is a pattern and practice by CrossCountry, which appears to have engaged in misconduct substantially similar to that described in this Complaint. As just one example, earlier this year, another competitor initiated legal action in this Court alleging that CrossCountry raided their employees who, acting at CrossCountry's direction, solicited employees and took customer lists and other confidential information. These cases bear many similarities.

90.     Thus, CrossCountry apparently follows a playbook of improperly raiding its competitor's employees, conspiring with those employees to breach their fiduciary and contractual duties, and assisting those employees in removing confidential information from their employers before leaving to join CrossCountry, exactly as happened here.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS
## UNDER THE DEFEND TRADE SECRETS ACT OF 2016 (18 U.S.C. § 1836(b)(1))

91.     Caliber re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

92.     Through its illegal actions, CrossCountry has improperly obtained, and now possesses, Caliber's Confidential Information.

93.     While employed by Caliber, the Departed Employees each obtained access to Caliber's Confidential Information, which is protectable as trade secrets.

94.     The Confidential Information retained by the Departed Employees is related to Caliber's mortgage services that are used in or intended for use in interstate commerce. Caliber provides mortgage services throughout the United States and the customer/prospective customer information obtained by the Departed Employees relates to a substantial number of these services.

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

95.     Caliber considers this type of information items to be confidential and proprietary, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.

96.     The Departed Employees have utilized and are continuing to utilize Caliber's Confidential Information to remove or divert Caliber's business to a competitor. In doing so, the Departed Employees are maliciously and willfully misappropriating Caliber's Confidential Information for the benefit of CrossCountry in direct competition with Caliber.

97.     CrossCountry directed, participated, and/or benefited from the misappropriation of Caliber's Confidential Information. Upon information and belief, Caliber's Confidential Information is now in CrossCountry's possession and on CrossCountry's systems. CrossCountry either directly instructed, or negligently permitted, such misappropriation as part of its scheme to hire Caliber's employees and pirate Caliber's customers.

98.     In any event, CrossCountry, either directly or through its employees, now has possession of, access to, and/or control over Caliber's trade secrets.

99.     At all times material, CrossCountry knew, or should have known, that Caliber's Confidential Information is deserving of trade secret protection under the Defend Trade Secrets Act, inasmuch as:

      a.   Caliber invested substantial resources to create, develop, compile, and maintain this information;

      b.   The information derives actual and potential independent economic value from not being generally known to, and not being readily ascertainable by proper means by, others;

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

c. Caliber takes significant precautions to safeguard the confidentiality of this information, including but not limited to requiring its employees to execute confidentiality agreements and other restrictive covenants;

d. The information cannot be replicated, compiled, or recreated by a competitor without substantial time, effort, and expense; and

e. Caliber's Confidential Information is of significant value to Caliber and is extremely important in the conduct of its business, and would be extremely valuable to CrossCountry, a competitor.

100. As a result of CrossCountry's misappropriation and use of Caliber's Confidential Information, CrossCountry has violated the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836(b)(1)).

101. CrossCountry's actions towards Caliber were willful, wanton, and malicious.

102. As a direct and proximate result of CrossCountry's violation of the Defend Trade Secrets Act of 2016, Caliber has and will continue to suffer great economic injury and loss, all to the direct gain of CrossCountry.

103. Caliber respectfully requests judgment in its favor, and against CrossCountry, for economic damages in an amount to be proven at trial, together with costs of suit and attorney's fees, as well as any other remedies the Court deems appropriate, as set forth in its Prayer for Relief.

**COUNT II**
**CONVERSION OF CONFIDENTIAL AND PROPRIETARY INFORMATION**

104. Caliber re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

105. Caliber had a legitimate and reasonable expectation that its employees would maintain the confidential nature of its Confidential Information.

*AMENDED COMPLAINT - 37*
*(2:22-cv-00616-RAJ)*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

106.     CrossCountry misappropriated Caliber's Confidential Information, used it to solicit/divert Caliber's customers and/or prospects to CrossCountry, and wrongfully retained such Confidential Information.

107.     To the extent any of Caliber's Confidential Information does not rise to the level of trade secret protection, CrossCountry is liable for the wrongful conversion of Caliber's confidential and proprietary materials.

108.     CrossCountry's actions toward Caliber were willful, wanton, and malicious.

109.     By virtue of the foregoing conduct, CrossCountry has knowingly and willfully violated Caliber's legal rights, and, as a direct and proximate cause of those actions, Caliber has and will continue to suffer great economic injury and loss, all to the direct gain of CrossCountry.

110.     Caliber respectfully requests judgment in its favor, and against CrossCountry, for economic damages in an amount to be proven at trial, together with costs of suit and attorney's fees, as well as any other remedies the Court deems appropriate, as set forth in its Prayer for Relief.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACT

111.     Caliber re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

112.     Most, if not all, of the Departed Employees are a party to a valid and enforceable Agreement with Caliber.

113.     CrossCountry knew of the Departed Employees' Agreements with Caliber.

114.     The respective Agreements preclude Caliber employees from, among other things:

    a.     soliciting other Caliber employees to discontinue their employment with Caliber;

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

b.   converting or removing loans in process at Caliber; and

c.   retaining, using, misappropriating, or disclosing Caliber's Confidential Information.

115.   Caliber has met all of its obligations owed to the Departed Employees under their Agreements.

116.   Caliber had a legitimate and reasonable expectation that it would receive the benefits of its contractual arrangements.

117.   Caliber had a legitimate expectation that CrossCountry would not interfere with its valid contractual arrangements.

118.   CrossCountry, without privilege to do so, acted with the intent to harm Caliber by intentionally inducing and encouraging the Departed Employees to breach their contracts with Caliber by (1) soliciting Caliber employees to terminate their employment relationship with Caliber; (2) diverting, converting, and removing loans in process at Caliber to take them to CrossCountry; and (3) retaining, and using, Caliber's Confidential Information.

119.   By virtue of the foregoing conduct, CrossCountry has knowingly and willfully violated Caliber's legal rights, and, as a direct and proximate cause of CrossCountry's actions, Caliber has and will continue to suffer great economic injury and loss, all to the direct gain of CrossCountry.

120.   Caliber respectfully requests judgment in its favor, and against CrossCountry, for economic damages in an amount to be proven at trial, together with costs of suit and attorney's fees, as well as any other remedies the Court deems appropriate, as set forth in its Prayer for Relief.

## COUNT IV
## TORTIOUS INDUCEMENT TO BREACH FIDUCIARY DUTY OF LOYALTY

121.   Caliber re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

122.    CrossCountry, without privilege to do so, intentionally and purposefully induced the Departed Employees to breach their fiduciary duties and duties of loyalty to Caliber.

123.    Numerous of the Departed Employees held a management position and/or position of trust and confidence while employed with Caliber and were entrusted with significant responsibility.

124.    These Departed Employees owed fiduciary duties and duties of loyalty to Caliber by virtue of their agreements, employment, and positions of trust with Caliber.

125.    These Departed Employees' duties included the duty of undivided loyalty and the duty to act with the utmost fidelity, integrity, and honesty at all times, and a duty not to act in concert with any third parties contrary to the interest of Caliber.

126.    In the scope of their employment, Caliber entrusted the Departed Employees with Caliber's Confidential Information and access to its employees, customers, and prospects. The Departed Employees' fiduciary duty continues after termination of employment and prohibits an ex-employee's disclosure or use of Confidential Information acquired during their employment.

127.    Caliber had a legitimate and reasonable expectation that it would receive the benefits of its fiduciary relationships.

128.    Caliber had a legitimate expectation that CrossCountry would not interfere with its fiduciary relationships.

129.    CrossCountry knew that the Departed Employees owed a fiduciary duty to Caliber by virtue of their Agreements and positions of trust at Caliber.

130.    CrossCountry, without privilege to do so, intentionally and purposefully induced the Departed Employees to breach their fiduciary duties and duties of loyalty to Caliber by, among other misdeeds:

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

a.   soliciting Caliber's employees to leave their employment;

b.   removing, diverting, and converting loans in process at Caliber;

c.   misappropriating Caliber's Confidential Information; and

d.   concealing their activities and misdeeds from Caliber.

131.   CrossCountry knew its conduct would result in significant injury to Caliber and acted with malice and the intent to injure Caliber.

132.   By virtue of the foregoing conduct, CrossCountry knowingly and willfully violated Caliber's legal rights, and, as a direct and proximate cause of CrossCountry's conduct and the Departed Employees' breach of their fiduciary duty, Caliber has and will continue to suffer great economic injury and loss, all to the direct gain of CrossCountry and the Departed Employees.

133.   Caliber respectfully requests judgment in its favor, and against CrossCountry, for economic damages in an amount to be proven at trial, together with costs of suit and attorney's fees, as well as any other remedies the Court deems appropriate, as set forth in its Prayer for Relief.

## COUNT V
## CIVIL CONSPIRACY

134.   Caliber re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

135.   CrossCountry conspired with the Departed Employees to violate their legal obligations to Caliber, including their restrictive covenants regarding solicitation of employees, misappropriation of confidential information, and removal of loans in process with Caliber.

136.   All the actions taken by the Departed Employees were done with CrossCountry's knowledge and approval, if not at CrossCountry's specific direction.

137.    Indeed, CrossCountry offered the Departed Employees significant financial inducements to violate their legal obligations owed to Caliber. Thus, CrossCountry played an essential role.

138.    By virtue of the foregoing conduct, CrossCountry has knowingly and willfully violated Caliber's legal rights, and, as a direct and proximate cause of those actions, Caliber has and will continue to suffer great economic injury and loss, all to the direct gain of CrossCountry.

139.    Caliber respectfully requests judgment in its favor, and against CrossCountry, for economic damages in an amount to be proven at trial, together with costs of suit and attorney's fees, as well as any other remedies the Court deems appropriate, as set forth in its Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Caliber Home Loans, Inc., prays for the following relief:

1.    For compensatory damages in excess of $5,000,000, in an amount to be determined;

2.    For attorney's fees and costs, in an amount to be determined;

3.    For statutory damages under the Defend Trade Secrets Act, in an amount to be determined;

4.    For pre-judgment interest at the maximum allowable rate; and

5.    For any other remedies and relief that the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Caliber Home Loans, Inc. hereby demands a trial by jury for all issues so triable.

///

///

///

**HILLIS CLARK MARTIN & PETERSON P.S.**
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1

Dated this 13th day of April, 2023.

2

HILLIS CLARK MARTIN & PETERSON P.S.

3

4          By   *s/ Eric D. Lansverk*
           Eric D. Lansverk, WSBA #17218
5          999 Third Avenue, Suite 4600
           Seattle, WA 98104
6          206.623.1745
           eric.lansverk@hcmp.com
7

8          Andrew M. DeLucia (admitted *Pro Hac Vice*)
           RUBIN, FORTUNATO & HARBISON P.C.
9          1200 Liberty Ridge Drive, Suite 220
           Wayne, Pennsylvania 19087
10         610.408.2025
           adelucia@rubinfortunato.com
11

12         *Counsel for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*AMENDED COMPLAINT - 43*
*(2:22-cv-00616-RAJ)*

HILLIS CLARK MARTIN & PETERSON P.S.
999 Third Avenue, Suite 4600
Seattle, Washington 98104
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

# EXHIBIT "A"

# Re: CORE December - Realtor Assignment

**From:**   Mark Everts <evertsmark@gmail.com>
**To:**   Mark Everts <mark.everts@caliberhomeloans.com>
**Date:**   Fri, 03 Dec 2021 13:55:49 -0800

Well - I just realized that EOD to you is coming up very shortly for you and I promised something to you.  Here's what I can share with you now . . . if the numbers make 'sense' - then I can commit to the following:

1.  Delay leaving management for one more year (btw, this is NOT a delay in being an LC - I love that and can do it in my sleep - I want to stay originating for another 10 years at least)
2.  Set up an office and get it staffed with at least 4 to 8 top producers
3.  Groom one of them (or a competent 'Manager' not necessarily a producer) to handle day to day operations.
4.  At the end of the year stay on in a leadership role for the next 4 years to ensure the office stays vibrant/strong.
5.  Stay producing till I'm 70 like you.

Here's my connections:
Hans - as you know is considering this option strongly
Michelle - she is having more hesitations (according to Hans) - but she is loyal to me and would for sure jump if she knew I was on board.
LC 1 - loyal to me - solid agent following, closed $98M last year, $64M was purchase
LC 2 - loyal to me - an up and comer - already has a team of 3 - young and hungry (think Kevin Ng) was a TLC for years - he has closed $8m and $9m a month for the last 4 months - 90% of it purchase.
LC 3 - newer LC - solid closing ~$3m a month
LC 4 -  seasoned LC, part time mom - will close $60M this year, closed the same last year - very loyal to me
There are others, but they would be less than a 50% chance of coming over.

Talking turkey with you here Scott - and please keep confidential - you asked if I had enough to retire on - I'm at $8MM + in liquid assets and then another ~$4MM in Real estate assets - so yes, I can retire now nicely - but this does have me excited.  I also know the 'game' and how this works - I've seen it dozens of times before with other folks (either coming on with us or being recruited away) - an offer will be made, the person accepts the offer, then the current company comes back to the recruit and says 'oh, wait wait wait - if you don't go then we will do this for you' - you know the drill.  This is NOT what I am angling for at all, there are other reasons for the serious talks - at the same time one would have to weigh out the pros and cons of that.

I guess what I'm saying is that any offer received to leave would have to so outweigh the offer to stay that it makes sense to go thru the rig-a-ma-roll (like that word, it was a favorite of my dad's) of uprooting my team and going elsewhere.

I hope that will give you enough and I see by my clock that it is just 5 min. before 5 your time :)

On Fri, Dec 3, 2021 at 1:06 PM Mark Everts <evertsmark@gmail.com> wrote:

---------- Forwarded message ---------
From: **Scott Forman** <Scott.Forman@myccmortgage.com>
Date: Fri, Dec 3, 2021 at 12:40 PM
Subject: CORE December - Realtor Assignment
To: Mark Everts <evertsmark@gmail.com>

Hi Mark,

Here it is, let me know if you have any questions.

AMENDED COMPLAINT - 45
(2:22-cv-00616-RAJ)

**Scott Forman**
Executive Vice President
**D** 201.505.0843
**E** scott.forman@myccmortgage.com

  

APPLY NOW

**CrossCountry Mortgage, LLC**
102 Chesnut Ridge Rd Suite 200
Montvale, NJ 07645
Personal NMLS12460
Company NMLS3029



CONTACT US

NJ 201.505.0843   NY 914.245.4900

NOTICE: The information contained in this communication is confidential and/or legally privileged. It is intended only for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this information is strictly prohibited. If you have received this electronic mail transmission in error, please destroy the original communication, delete it from your system without copying or forwarding it, and notify us by telephone at 440-845-3700.

# EXHIBIT "B"



VIA EMAIL ONLY

December 16, 2021

Mark Everts

RE: Confidential Offer of Employment

Dear Mark,

It is my pleasure to extend you the following confidential offer of employment on behalf of CrossCountry Mortgage. I am excited that you are selecting CrossCountry Mortgage as your employer of choice. Please review the details of your offer as outlined herein.

Title/Position: Branch Manager

You will be provided the following:

- o Sign-on bonus of $1,000,000 which shall be paid on the first payroll from the start of your employment.
- o An additional volume bonus of $500,000 bonus payable when branch obtains $600 Million in funded volume within first 24 months from start of employment.
- o $150,000 Corporate credit to Branch P&L
- o Marketing allowance of $50,000 for the purpose of rebranding
- o CrossCountry Mortgage will provide a turnkey, class A office space complete with computers, printers, furniture, etc.

*(handwritten: 27 months (ME))*

If you accept the terms of this offer, please sign below and return to me within five days of the date of this letter. I look forward to developing our relationship, however, please understand your relationship with CrossCountry Mortgage, LLC will be that of an at-will employee. This offer is contingent upon the parties entering into a formal employment and compensation agreement.

Please feel free to reach out to me directly at 440-262-3500 or via email at rleonhardt@myccmortgage.com with any comments or questions.

Best Regards,

**Ron J. Leonhardt, Jr.**

President

I accept the offer as outlined above.

_____          12-19-21
Mark Everts                                Date